717 P.2d 927

John W. DRAHOS,
Petitioner/Appellant,

v.

Jessica RENS, Personal Representative
of the Estate of Mary I. Drahos,
Respondent/Appellee.

No. 2 CA–CIV 5501.

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 13, 1985.

Reconsideration Denied Jan. 20, 1986.

Review Denied April 22, 1986.

Alex A. Gaynes, Tucson, for petitioner/appellant.

John S. O'Dowd, Tucson, for respondent/appellee.

## OPINION

HATHAWAY, Presiding Judge.

John Drahos appeals the granting of legal separation and the property division entered by the trial court. We affirm in part and reverse on the issue of the value of appellee's lien on appellant's residence.

John and Mary Drahos were married on August 17, 1956. The day before their marriage, Mr. Drahos purchased a residence and took title solely in his own name. The purchase price was $21,000, of which he made a $7,000 down payment and financed the remainder. The residence is now worth approximately $80,000. Mr. Drahos filed a petition for dissolution of marriage on June 7, 1983. Two days later, on June 9, 1983, Mrs. Drahos filed a similar petition for dissolution. Later, upon stipulation of the parties, the dissolution action was amended and became an action for legal separation. On December 24, 1984, the trial court signed a minute entry which included a distribution of property. Mrs. Drahos died on January 13, 1985. A decree of legal separation was entered on March 26, 1985, nunc pro tunc to the date of the minute entry. Appellant filed motions opposing entry of judgment nunc pro tunc, for a new trial and to set aside and vacate

judgment. These motions were denied and the notice of appeal was filed June 11, 1985.

Appellant raises three issues on appeal: (1) the trial court abused its discretion in granting Mrs. Drahos an equitable lien for 50% of the value of Mr. Drahos' residence; (2) the trial court erred in entering a decree nunc pro tunc, because the death of Mrs. Drahos altered the circumstances of the legal separation, and (3) the trial court abused its discretion in denying a motion for new trial due to newly discovered evidence.

### I. Was the equitable lien excessive?

In Arizona, property owned or acquired by either spouse prior to marriage is separate property and does not change its character after the marriage except by agreement or operation of law. A.R.S. § 25–213. *Sellers v. Allstate Insurance Company*, 113 Ariz. 419, 555 P.2d 1113 (1976); *Kingsbery v. Kingsbery*, 93 Ariz. 217, 379 P.2d 893 (1963). Therefore, a residence which is separate property does not change its character because it is used as a family home and mortgage payments are made from community funds. *In re Estate of Sims*, 13 Ariz.App. 215, 475 P.2d 505 (1970); *Schock v. Schock*, 11 Ariz.App. 53, 461 P.2d 697 (1969).

Because Mr. Drahos acquired his residence before marriage and took title solely in his own name, the property clearly is, as the trial court recognized, his sole and separate property, even though the couple resided there and mortgage payments and repairs were allegedly made with community funds. The community, which contributed capital to the separate property, is nevertheless entitled to some form of compensation. *Honnas v. Honnas*, 133 Ariz. 39, 648 P.2d 1045 (1982); *Lawson v. Ridgeway*, 72 Ariz. 253, 233 P.2d 459 (1951); *Hanrahan v. Sims*, 20 Ariz.App. 313, 512 P.2d 617 (1973). The community has the right to an equitable lien against the separate property even though the character of that property has not changed. *Stauss v. Stauss*, 82 Ariz.

268, 312 P.2d 148 (1957); *Lawson v. Ridgeway,* supra; *Potthoff v. Potthoff,* 128 Ariz. 557, 627 P.2d 708 (App.1981).

 Decisions in this and other jurisdictions have disputed how to calculate the amount of the equitable lien. The Arizona Supreme Court has stated that when community funds are used to *improve* separate property, a value-at-dissolution formula which takes into account the enhanced value of the property should be utilized rather than an amount-spent formula, which is a simple reimbursement scheme. *Honnas v. Honnas,* supra; *Lawson v. Ridgeway,* supra. In this case it was only alleged that community funds were used to pay the mortgage and make repairs. There was no indication in the record that the increased value of the residence is in any way attributable to anything besides the general trend of rising real estate values. Therefore, we must determine whether the value-at-dissolution formula applies when community funds are used to benefit but not necessarily improve separate property. We believe that it should. The language in the *Honnas* decision is quite expansive. That decision stated:

> "Community funds ... were used for the benefit of the separate property, and the community is entitled to share in the enhanced value of the property due to the expenditure of funds...." 133 Ariz. at 40, 648 P.2d at 1046.

We find the language in *Honnas* controlling and, by implication, it overruled anything that might have been said to the contrary in *Hanrahan v. Sims,* supra.

 The next issue is how to apply the value-at-dissolution/enhanced-value formula when mortgage payments have been made with community funds. In *In re Marriage of Marsden,* 130 Cal.App.3d 426, 181 Cal.Rptr. 910 (1982), the California appeals court adopted a value-at-dissolution formula we find would effectively implement the mandate of *Honnas* and protect

the interests of both spouses. The formula is as follows:

> The separate property interest is determined by adding the down payment to the product of the down payment plus principal payments made with separate property divided by the purchase price times the appreciation invalue. The community property equitable lien interest is determined by adding the principal balance paid by the community to the product of the community property principal payments divided by the purchase price times the appreciation in value.

In other words, as we interpret the formula, division of the property is determined in proportion to the contribution to principle. For example, assuming hypothetically in this case that all loan payments were made with community funds and the current value of the house is $80,000, the formula applied is as follows:[1]

*Separate property interest.*

| | |
|---|---|
| Down payment | $7,000 |
| Principal payments | –0– |
| 33.33% of appreciation after marriage ($7,000 down payment divided by $21,000 purchase price) | $19,665 |
| Value of separate property | $26,665 |

*Community property interest.*

| | |
|---|---|
| Principal payments | $14,000 |
| 66.67% of the appreciation after marriage ($14,000 principal balance paid by community divided by $21,000 purchase price) | $39,335 |
| Value of community property interest | $53,335 |

Unfortunately, the transcript of proceedings is not included in the record and we do not have before us sufficient facts to determine which of the loan payments, if any, were made with community funds and which were made with separate funds. We do, however, have enough facts before us to determine that the trial court erred in granting Mrs. Drahos a 50% equitable lien on the residence. Even in the best of circumstances for the community as shown in

---

1. The above formula does not take into account pre-nuptial appreciation, such appreciation being impossible in this case. In a proper case, the separate property interest should be given credit for pre-nuptial appreciation. See *Marsden,* supra.

the example above, the community does not have a 100% interest in the property. Yet, by awarding Mrs. Drahos 50%, the trial court assumed the community had a 100% interest. Therefore, that part of the judgment is vacated and remanded to the trial court to determine the extent of the community's lien. It should be noted that if the mortgage payments were made from commingled funds, there is a presumption that community funds were used. See *Cooper v. Cooper*, 130 Ariz. 257, 635 P.2d 850 (1981). Additionally, all property owned during marriage is presumed to be community and it is appellant's burden to show separate funds were used. *Malich v. Malich*, 23 Ariz. 423, 204 P. 1020 (1922); *Tyson v. Tyson*, 61 Ariz. 329, 149 P.2d 674 (1944).

### II. Did the trial court err by entering a decree nunc pro tunc?

Appellant argues that the trial court erred in entering the decree nunc pro tunc because the very nature and structure of the legal separation was based on the fact that Mrs. Drahos was living. Her death, it is argued, went to the very heart of the case, and issuing an order nunc pro tunc made no sense under these circumstances.

Under Rule 58(a), Rules of Civil Procedure, 16 A.R.S., the trial court may enter judgment nunc pro tunc "in such circumstances and on such notice as justice may require." In *Allen v. Allen*, 129 Ariz. 112, 628 P.2d 995 (App.1981), the court entered such a judgment under very similar circumstances. In that case, there had been a decree of dissolution as opposed to a decree of legal separation. We do not see that as a significant factor for distinguishing the two cases. We hold that the trial court was within its discretion in entering the decree nunc pro tunc.

### III. Did the trial court abuse its discretion in denying the motion for new trial?

Appellant argues that the trial court should have granted a new trial because appellant has discovered evidence that appellee hid funds during the proceedings. Appellee responded to appellant's motion by showing evidence that the additional funds were from alimony payments and social security and not the result of any hidden community funds. Accordingly, the trial court acted within its discretion in denying the motion for new trial and this case does not fall under the mandate of *Melcher v. Melcher*, 137 Ariz. 210, 669 P.2d 987 (App.1983), or Rule 59(b), Rules of Civil Procedure, 16 A.R.S.

Affirmed in part, reversed in part.

LACAGNINA and LIVERMORE, JJ., concur.