NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

HOLLY LYN BUTLER-HINTZ, *Petitioner/Appellant/Appellee*,

*v.*

FREDERICK ERNEST HINTZ, *Respondent/Appellee/Appellant*.

No. 1 CA-CV 18-0428 FC
FILED 9-26-2019

Appeal from the Superior Court in Maricopa County
No. FN2017-052438
The Honorable Roy C. Whitehead, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

The Law Office of Carrie M. Wilcox, PLLC, Phoenix
By Carrie M. Wilcox, Sabra Barnett
*Counsel for Petitioner/Appellant/Appellee*

Frederick Ernest Hintz, Glendale
*Respondent/Appellee/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Kenton D. Jones joined.

---

**C R U Z**, Judge:

¶1        Frederick Ernest Hintz ("Husband") appeals the superior court's dissolution finding of a community lien on Husband's condominium and the calculation of the community's share of the sale of the parties' business. Holly Lyn Butler-Hintz ("Wife") cross-appeals the judgment giving Husband and Wife joint custody over their two dogs. For the following reasons, we affirm in part, and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

¶2        On May 26, 1990, the parties were married in Phoenix. In 2006, Husband purchased a condominium to use as his insurance company's place of business in Peoria. In 2008, Wife signed a disclaimer deed waving any interest in the condominium. The parties agree the condominium is Husband's sole and separate property. Prior to filing of the petition for dissolution, Husband sold the insurance business to his adult daughter from a previous relationship. Initially, Husband disclosed the sales price as $175,000. Then, during the pendency of the divorce, Husband executed a contract addendum purportedly reducing the purchase price to $50,285.95. Still, the superior court accepted $175,000 as the final purchase price.

¶3        On the scheduled trial date, instead of proceeding to trial, the parties participated in a settlement conference with the superior court. As a result of that settlement conference the parties entered into an agreement under Arizona Rule of Family Law Procedure 69. That agreement included final resolution on distribution of personal property and refinancing of the loan secured by the marital residence. The parties agreed to have the court resolve the following issues based on briefing and without a trial: (1) negative equity of the marital residence, (2) determination as to any community interest in Husband's condominium, (3) distribution of the parties' dogs, and (4) each parties' application for attorneys' fees.

¶4          After considering each of the parties' briefs, the court issued an under advisement ruling via minute entry.  Of relevance here, the court ruled that, because community funds were used to benefit the property, there is a community lien on Husband's condominium and Wife is entitled to one-half of that lien.  The court also ruled that the value-at-dissolution formula in *Drahos v. Rens*, 149 Ariz. 248, 250 (App. 1985), should be applied to calculate the amount of the community's lien.  To that end, the superior court ordered an appraisal.

¶5          The court-ordered appraisal noted that Husband purchased the condominium for $206,860 in 2006, and that by April 2018 the value had appreciated to $210,000.  However, in calculating the value of the community lien the superior court used Wife's proposed purchase price of $170,000.  The superior court also ruled the insurance business was sold for $175,000 and Wife was entitled to half of that amount.  Lastly, over Wife's objection, the court ordered joint custody of the parties' two dogs.

¶6          Husband appeals the imposition of a community lien on the condominium as well as the purchase price used to calculate Wife's share of the sale of the business.  Wife cross-appeals the dog custody and visitation ruling.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

I.     Standard of Review

¶7          "In apportioning community property between the parties at dissolution, the superior court has broad discretion to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion." *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).  The superior court abuses its discretion when it "commits an error of law in the process of exercising its discretion."  *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).  "[W]e consider the evidence in the light most favorable to upholding the superior court's ruling and will sustain the ruling if it is reasonably supported by the evidence." *Boncoskey*, 216 Ariz. at 451, ¶ 13.

II.    Community Lien on Husband's Condominium

¶8          Separate property of a spouse does not become community property only because community funds are used to pay the mortgage. *Drahos*, 149 Ariz. at 249.  "The community, which contributed capital to the separate property, is nevertheless entitled to some form of compensation." *Id.*  "The community has the right to an equitable lien against the separate

3

property even though the character of that property has not changed." *Id.*; *see also Honnas v. Honnas*, 133 Ariz. 39, 40 (1982) ("[T]he community is entitled to share in the enhanced value of the property due to this expenditure of [community] funds . . . .").

¶9            Husband argues the superior court abused its discretion when it imposed a community lien on the increase in value of Husband's separately-owned condominium because, according to him, the condominium is not residential property, but rather a business property.

¶10            We now examine the proper characterization of Husband's condominium. Arizona's tax law defines "[b]usiness" as "includ[ing] all activities or acts, personal or corporate, that are engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly." A.R.S. § 42-5001(1). "Real estate," on the other hand, is defined as "includ[ing] . . . any estates in land as defined in title 33, chapter 2, articles 1 and 2, regardless of whether located in this state." A.R.S. § 32-2101(48) (footnote omitted). The condominium used for the parties' insurance business is an estate in land, a tangible building with a legal description identifying a discreet location within this state. Even if used for a business purpose, the condominium at issue here is real estate.

¶11            Husband misunderstands our holding in *Drahos*, which is more expansive and "applies when community funds are used to benefit but not necessarily improve separate property." *Drahos*, 149 Ariz. at 250. Like in *Drahos*, here community funds were used to pay the mortgage during the duration of the marriage, a benefit to one of the spouse's separate property. In addition, the condominium increased in value during the marriage. Much like in the case at bar, in *Drahos* "it was only alleged that community funds were used to pay the mortgage." *Id.* "There was no indication in the record that the increased value of the residence [was] in any way attributable to anything besides the general trend of rising real estate values." *Id.* Thus, the community was entitled to a lien for part of the increase in value of the property.

¶12            Here, it was Husband's burden, as the party opposing the community lien, to show separate funds were used to pay his condominium's mortgage. *Id.* at 251. Instead of making such a showing, Husband argues the community has benefitted from his sole and separate property by receiving a tax advantage, and by providing a place for the community business to conduct its operation. He also argues Wife's community efforts were not responsible for any increase in the value of the business condominium. Lastly, Husband asserts that the monies

withdrawn by Wife from the business accounts should be counted against the community as a further benefit.

**¶13**　　　"[I]t was within the trial court's discretion to start with the presumption that all of the growth in [the husband's separate property] was community property and then look to the evidence presented by [the h]usband to see if he had managed to overcome that presumption." *Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 257, ¶ 35 (App. 2008).

**¶14**　　　The parties agreed the condominium mortgage payments were paid from the insurance business account. The parties also agreed that the insurance business was a community asset. Consequentially, the superior court found that "community funds were used to benefit the property and that the property has experienced an increase [in value] during the marriage." Therefore, the superior court did not abuse its discretion in also finding the community was entitled to a lien against it.

III.　　Applicability of *Drahos* Value-at-Dissolution Formula

**¶15**　　　Husband also argues that the superior court abused its discretion when it applied the value-at-dissolution formula in *Drahos*, to determine the value of any community lien.[1] He argues the superior court should have used the formula in *Rueschenberg* to assess the active and passive contributions of Wife to the increase in value. We disagree.

**¶16**　　　Arizona courts are not bound by any one method when calculating a community lien. *Rueschenberg*, 219 Ariz. at 255, ¶ 25. In *Drahos*, we held that when community funds are used to benefit separate property, applying a value-at-dissolution formula to calculate a community lien upon real property is appropriate. *Drahos*, 149 Ariz. at 250; *see also*

---

[1]　　The *Drahos* formula is as follows:

> The separate property interest is determined by adding the down payment to the product of the down payment plus principal payments made with separate property divided by the purchase price times the appreciation [in value]. The community property equitable lien interest is determined by adding the principal balance paid by the community to the product of the community property principal payments divided by the purchase price times the appreciation in value. *Drahos*, 149 Ariz. at 250.

*Honnas*, 133 Ariz. at 41 (reaffirming a value-at-dissolution formula for real property cases).

**¶17** Moreover, *Rueschenberg* is inapposite here. In that case the property at issue was a business, not real property. *Rueschenberg*, 219 Ariz. at 250. There the court-appointed special master conducted a business valuation using the capitalization of earnings method, which factored in the business' normalized earnings and the community's labor in determining the rate at which the community should be credited for the increase in value of the business. *Id.* at 251. By contrast, real property, unless used as a rental property, is a form of passive investment that does not typically generate regular earnings during the time it is owned. Payments made toward the purchase obligation, along with fluctuations in the real estate market, and in some instances labor, are factors that contribute to the overall increase in its value. Increase in value of a business and of real property is determined by different types of calculations. In calculating the value of a business, the business valuation is generally used to establish the value of assets and of some stream of income. But in calculating the value of appreciation of real property, the appraisal seeks to determine the appreciation in value of a property from the time of purchase to a predetermined date. Regardless of the fact that the condominium was used for a commercial purpose, a value-at-dissolution formula may be used. *Lawson v. Ridgeway*, 72 Ariz. 253 (1951) (applying a value-at-dissolution formula to rental home business). Therefore, the superior court did not err when it applied the *Drahos* value-at-dissolution formula in determining the value of the community lien to be placed upon the condominium.

IV. *Drahos* Calculation

**¶18** "A factual finding is clearly erroneous if no substantial evidence supports it." *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 189, ¶ 58 (App. 2008). We evaluate each of Husband's arguments regarding the purchase price and mortgage balance used to calculate the community lien on the condominium in turn. However, for the reasons stated below we do not address Husband's arguments regarding the appraisal date used by the superior court.

A. Purchase Price

**¶19** Husband argues the superior court erred when it used the incorrect purchase price of the condominium to calculate the community lien. He alleges that he bought the condominium for $270,000, including mandatory tenant improvements, and used separate funds provided by his

mother which left a balance of $170,000. The parties agree the mortgage balance of the condominium was $170,000. Although Wife's position is that the purchase price of the condominium was $170,000, she argued in her final brief that "[c]ommunity funds were used to make the purchase[] and pay the mortgage," implicitly acknowledging that the purchase price exceeded the amount of the mortgage.

¶20　　　　Before the decree of dissolution was entered, Husband and Wife acknowledged that evidence provided by Husband supported a purchase price of $206,860. Additionally, the court-ordered appraisal also identified a purchase price of $206,860. Despite the acquiescence of the parties and the evidence before the superior court, the decree of dissolution adopted a purchase price of $170,000, as suggested by Wife in her final brief and in her proposed decree. Whether the additional funds above the mortgage amount were contributed by Husband out of his separate funds or by the community is a question of fact for the superior court to resolve. Regardless of that determination, because the superior court's finding of a $170,000 purchase price is not supported by substantial evidence, it is clearly erroneous. Accordingly, we reverse and remand for an application of the *Drahos* formula utilizing a purchase price supported by the evidence.

　　　　B.　　　Mortgage Balance

¶21　　　　Husband argues that the superior court used an incorrect remaining mortgage balance to calculate the community lien.

¶22　　　　In his final brief Husband presented the superior court with what was characterized as a loan payoff document stating that the remaining balance on the mortgage as of June 5, 2017,[2] was $124,867.37. Wife, consistent with her position in the joint pretrial statement, and in Husband's representation in his brief regarding the community lien, listed a mortgage balance of $121,090.67 in her proposed decree. The superior court adopted Wife's suggested mortgage balance when it adopted her proposed decree.

¶23　　　　The superior court's factual finding regarding the contested issue of the remaining balance on the condominium's mortgage was not clearly erroneous. Accordingly, the superior court did not err in accepting the mortgage loan figure proposed by Wife as part of the *Drahos* calculation.

---

[2]　　　　The actual date of service was over a month earlier, on April 25, 2017.

### C. Appraisal Date

¶24     Husband did not object to the appraisal date in the superior court. Therefore, Husband's argument on appeal that the appreciation in value of the condominium should be measured by use of the appraised value on the date of service of the petition is waived and we do not entertain it now. *See Airfreight Exp. Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109-10, ¶ 17 (App. 2007) (holding an argument waived on appeal by failing to raise it to the superior court).

## V.    Sale of Business

¶25     Husband argues the trial court erred in calculating the community's interest in proceeds of the insurance business' sale when it used a sale price of $175,000. "We defer to the trial court's factual findings unless clearly erroneous." *Clear Channel Outdoor, Inc.*, 218 Ariz. at 189, ¶ 58. "Nevertheless, we draw our own legal conclusions from the facts found or implied by the family court." *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010).

¶26     According to Husband, after Wife filed her petition for dissolution of the marriage, the sale price of the business was reduced to $50,285.95. Nonetheless, the superior court made a factual determination that Husband sold the business to his daughter for $175,000. Husband's sole argument on appeal regarding the sale of the business is that Wife failed to disclose the contract addendum showing the lower amount as the sales price. He does not explain why he could not similarly have submitted the addendum to the superior court, or why the court's credibility determination was clearly erroneous. Because there is evidence to support the court's finding, we hold the superior court did not err in ruling that the total sales price of the insurance business was $175,000.

## VI.    Dogs

¶27     Wife appeals the superior court's decree of dissolution granting Husband and Wife joint custody and visitation of the parties' dogs. Husband takes no position on appeal.

¶28     Wife argues that Arizona law does not authorize the superior court to grant joint custody and visitation of dogs and that said orders are contrary to the purpose of the law—to provide finality to the parties. Therefore, Wife argues that the superior court's decision awarding the parties joint custody and visitation of the dogs should be reversed. Husband did not file an answering brief addressing this matter. "When a

debatable issue is raised on review, the failure to file an answering brief generally constitutes a confession of error." *Gibbons v. Indus. Comm'n*, 197 Ariz. 108, 111, ¶ 8 (App. 1999). Accordingly, we treat Husband's failure to respond as a confession of error and reverse the superior court's orders mandating that the two dogs be kept together and exchanged between the parties on a monthly basis. We remand this issue to the superior court for a final allocation of ownership of the dogs among the parties.

VII.    Attorneys' Fees and Costs

**¶29**        Both parties request an award of attorneys' fees and costs under A.R.S. § 25-324 and Arizona Rule of Civil Appellate Procedure 21. In the exercise of our discretion we decline to award either party their attorneys' fees. Because both parties partially prevailed on appeal, we also decline to award costs to either party.

## CONCLUSION

**¶30**        For the foregoing reasons, we affirm in part, and reverse and remand in part, for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA