NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In re the Matter of:

FERIDE-KHANUM IMATDINOV, *Petitioner/Appellant,*

*v.*

ERNEST IMATDINOV, *Respondent/Appellee.*

No. 1 CA-CV 18-0560 FC
FILED 1-9-2020

---

Appeal from the Superior Court in Maricopa County
No. FC2017-010410
The Honorable Justin Beresky, Judge

**VACATED; REMANDED**

---

COUNSEL

Stevens & Van Cott, PLLC, Scottsdale
By Laurence B. Stevens, Charles C. Van Cott
*Counsel for Petitioner/Appellant*

Owens & Perkins, P.C., Scottsdale
By Lisa A. Whalen
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

¶1      Feride-Khanum Imatdinov ("Mother") appeals from (1) the decree of dissolution awarding joint legal decision-making authority to Ernest Imatdinov ("Father"), and (2) an order denying her request that Father reimburse the community for amounts paid toward Father's premarital debt and to reduce the mortgage thereby increasing the value of Father's sole and separate real property. Mother also appeals from the court's denial of her request for attorneys' fees. For the reasons that follow, we vacate the legal decision-making authority order, the community reimbursement order, and the denial of Mother's attorneys' fees and remand for reconsideration.

**FACTS AND PROCEDURAL HISTORY**

¶2      Mother was born in Ukraine and resided in the Crimea region until March 17, 2015, when she moved to Arizona to marry Father. Prior to relocating, Mother had taken no English classes; throughout the marriage, she communicated in Russian with Father and Father's family. Mother's family remains in Crimea, and when she moved, Mother had no contacts in Arizona outside of Father and Father's family.

¶3      A few months after marrying Mother, Father purchased a residential property with a down payment that included funds he had earned prior to the marriage, a gift from his mother, and funds he had earned after marrying Mother. Despite being unable to read the documents that were provided only in English, Mother signed a disclaimer deed, waiving any past, present, or future interest in the residence and confirming the residence as Father's separate property.

¶4      In January 2016, Mother gave birth to the parties' child, E.I. Mother stayed at home to care for E.I., and Mother and the child "were nearly constantly together." Mother was the primary caregiver for E.I.; the child spoke only Russian and did not begin to learn English until after the parties separated.

¶5             As the court subsequently found, Father "maintained absolute control over all finances" throughout the marriage and "financially terrorized Mother." She could not access any banking accounts and had to rely on Father for cash or a credit card linked to one of Father's accounts. Mother was unable to attend English courses with any regularity and Father prevented her from obtaining a driver's license. Father kept Mother socially isolated, forbidding her from having friends over to the home.

¶6             When Mother eventually obtained work and relied on a friend's husband to drive her, Father and Father's mother reacted by "yelling at Mother, calling her names and trying to take Mother's phone away." That incident in December 2017 prompted Mother to seek and obtain an order of protection against Father's mother.

¶7             Mother petitioned for dissolution shortly thereafter, and Father moved out of the marital residence. A few weeks later, Mother discovered listening devices in the bedroom and the kitchen that had been hidden by Father. Mother then obtained an order of protection against Father.

¶8             The family court issued temporary orders that granted Mother exclusive use of the marital residence, awarded the parties joint legal decision-making authority with Mother having final decision-making authority, issued an equal parenting time schedule, and ordered Father to pay $3,500 toward Mother's attorneys' fees. When the equal parenting time schedule went into effect, Mother called police several times when Father refused to allow Mother any contact with E.I. during Father's parenting time. The Department of Child Safety ("DCS") opened a brief investigation of Father following a report of child abuse, closing the investigation upon finding the report unsubstantiated.[1]

¶9             At trial, Mother sought to continue the temporary orders for joint legal decision-making authority with final decision-making authority for Mother, citing the parties' inability to agree on medical care and daycare

---

[1]        The family court identified Mother as the individual who called DCS. The record, however, indicates that a counselor placed the call as part of mandated reporting procedures and had Mother describe alleged incidents to DCS officials through an interpreter while the counselor remained on the call.

for E.I. and alleging Father had committed domestic violence.[2] Father sought sole legal decision-making authority. The family court found that Father had "engaged in acts that constitute domestic violence" but awarded joint legal decision-making authority to the parties after finding sole legal decision-making "is not in the child's best interests."

¶10 The family court found that "Mother has virtually no financial resources other than the monetary orders made herein." At the time of the trial, Mother was working at a dual-language daycare facility earning minimum wage; prior to moving to the United States, Mother had worked as a pediatric nurse in a children's hospital. Mother testified that she planned to complete both the English and nursing courses necessary to become certified in Arizona, a process the court estimated would take three years. Father worked as a pharmacist earning significantly more than Mother, approximately $10,000 per month. The court ordered Father pay spousal maintenance to Mother for thirty-six months.

¶11 Given Father's control over finances and Mother's lack of knowledge of the marital assets, the court found "an equal division of community property is inappropriate to achieve equity." The court awarded the residential property to Father as sole and separate property and divided the funds in the family's checking account equally. The court also ordered that Father pay to Mother an equalization payment representing community funds he used to make a lump-sum payment toward his student loans in 2017. Despite the "substantial disparity of financial resources" the court denied both parties' requests for attorneys' fees and costs, finding both parties acted "unreasonably."

¶12 The court granted Mother's motion to reconsider the issue of a community lien on the residence and awarded an equalization payment for half of the amount of community funds Father used as part of the down payment for the marital residence. The court declined, however, to find community liens against the earnings used to pay the monthly mortgage, for the increase in equity in the marital residence, or for the community earnings used to make payments toward Father's student loans. The court

---

[2] The record indicates Mother made this request relying on this court's decision in *Nicaise v. Sundaram*, which determined that joint legal decision-making with final decision-making "is, in reality, an award of sole legal decision-making." 244 Ariz. 272, 278, ¶ 18 (App. 2018). The Arizona Supreme Court vacated that portion of the decision in 2019, but after the family court issued the dissolution decree. *See Nicaise v. Sundaram*, 245 Ariz. 566, 569, ¶ 17 (2019).

also denied Mother's request to reconsider the rulings regarding legal decision making and attorneys' fees.

¶13  Mother timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## ANALYSIS

*I.  Legal Decision-Making Authority*

¶14  Mother argues that the family court misapplied A.R.S. § 25-403.03(A) and improperly granted joint legal decision-making authority after finding Father had committed acts of domestic violence under A.R.S. § 25-403. We review the court's orders on legal decision-making authority for an abuse of discretion. *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003). Abuse of discretion exists "when the record is 'devoid of competent evidence to support the decision,' or when the court commits an error of law in the process of reaching a discretionary conclusion." *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018) (quoting *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009)). We defer to the court's findings of fact unless the findings are clearly erroneous, but we review the court's conclusions of law and interpretation of statutes *de novo*. *Id.*

¶15  In determining legal decision-making authority, the family court must consider "all factors that are relevant to the child's physical and emotional well-being," including "[w]hether there has been domestic violence . . . pursuant to § 25-403.03." A.R.S. § 25-403(A), (A)(8). A finding of domestic violence "must be treated as a factor of 'primary importance'" and the court must consider the safety of both the child and the victim of domestic violence. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 301, ¶ 19 (App. 2013) (quoting A.R.S. § 25-403.03(B)).

¶16  Section 25-403.03(A) states in relevant part that

> [J]oint legal decision-making shall not be awarded if the court makes a finding of the existence of significant domestic violence . . . or if the court finds by a preponderance of the evidence that there has been a significant history of domestic violence.

If the court does not make such findings and a parent who has committed domestic violence against the other parent seeks sole or joint legal decision making, A.R.S. § 25-403.03 creates a rebuttable presumption that "an award of sole or joint legal decision-making to the parent who committed the act

of domestic violence is contrary to the child's best interests." The court must make specific findings on the record of specific evidence to rebut the presumption before awarding sole or joint legal decision-making authority to the parent who has committed domestic violence. A.R.S. §§ 25-403.03(D), -403(B); *see Christopher K.*, 233 Ariz. at 301, ¶¶ 18-19.

**¶17** As previously noted, Mother sought to finalize the temporary orders granting her joint legal decision making with final decision-making authority. Father sought sole legal decision-making authority. The court made findings that Father committed domestic violence against Mother, specifically that he "financially terrorized Mother by exercising absolute control over all the finances during the marriage" and that she "was not allowed to have a life outside the marriage." Father admitted to placing recording devices in the home, and the court found his testimony "revealed how paranoid and controlling Father was during the marriage." After making these findings, the court determined Father's acts did not preclude an award of joint legal decision-making authority under A.R.S. § 25-403.03(A), found Father rebutted the presumption against joint legal decision-making authority under A.R.S. § 25-403.03(D), and ultimately awarded joint legal decision making.

**¶18** The decree of dissolution blurs the distinction between the two considerations in A.R.S. § 25-403.03(A). The decree reads

> Having found the existence of domestic violence, the Court addresses the admonition in A.R.S. § 25-403.03(A), which states that notwithstanding the presumption in subsection D, "joint custody shall not be awarded if the court makes a finding of the existence of <u>significant</u> domestic violence pursuant to § 13-3601 or if the court finds by a preponderance of the evidence that there has been <u>significant</u> domestic violence." A.R.S. § 25-403.03(A) (emphasis added).

> Meaning, a finding of significant domestic violence or a history of significant domestic violence precludes an award of joint legal decision making or an award of sole legal decision making to the parent who committed the significant act of domestic violence.

(Citation omitted.). The statute, however, refers to a finding "by a preponderance of the evidence that there has been *a significant history* of domestic violence." A.R.S. § 25-403.03(A) (emphasis added).

¶19 In interpreting a statute, we must give meaning to each word, phrase, or clause "so that no part of the statute will be void, inert, redundant, or trivial." *Walker v. City of Scottsdale*, 163 Ariz. 206, 210 (App. 1989). As it relates to the appropriate standard, we find a distinction between the statute's explicit language of "significant history of domestic violence" and the court's use instead of "a history of significant domestic violence" as its standard. The family court's misunderstanding or misstatement of the relevant statutory language amounts to an error in the law, and we cannot tell to what extent that misstatement or misunderstanding affected its discretionary conclusion that A.R.S. § 25-403.03(A) did not apply to Father's acts of domestic violence against Mother. While we may have our own view of what constitutes a "significant history of domestic violence," we are not finders of fact, and it is instead the role of the family court to consider and weigh the facts, and to apply the correct statutory standard in reaching its findings. Accordingly, we remand this issue to the family court to determine whether, on this record, Father's conduct constituted a "significant history of domestic violence," as required by the statute.

## II. *Community Reimbursement*

¶20 Mother argues that the family court erred in not awarding Mother equalization payments for community funds used to pay the monthly mortgage and Father's student loan payments and for the increase in equity in the marital residence. We will not disturb the family court's apportionment of community property in a marital dissolution absent an abuse of discretion. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005). "An abuse of discretion exists when the trial court commits an error of law in the process of exercising its discretion." *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23 (App. 2004).

### A. *Marital Residence*

¶21 The community is entitled to a share of any equity attributed to community funds used to pay the mortgage of the marital residence. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 524, ¶ 12 (App. 2007). This is true even if the residence is the separate property of one spouse. *See Drahos v. Rens*, 149 Ariz. 248, 249-50 (App. 1985). "[I]f the mortgage payments were made from commingled funds, there is a presumption that community funds were used." *Id.* at 251. The community is also entitled to share in the increase of the property's value during the marriage, "even if the increased value was due only to general market conditions." *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 13 (App. 2010) (citing *Honnas v. Honnas*, 133 Ariz. 39, 40

(1982) and *Drahos*, 149 Ariz. at 250). The value-at-dissolution formula applies to the calculation of the community's share of enhanced value of the property due to the expenditure of community funds to benefit the property. *See Drahos*, 149 Ariz. at 250.

**¶22** Father purchased the marital residence a few months after marrying Mother. The court found the property to be the Father's separate property because Mother signed a disclaimer deed, waiving her interest in the property.[3] Assuming without deciding the disclaimer deed is enforceable, we note a disclaimer deed does not affect the community's interest in the property's increased value or whether an equitable lien attaches as the result of using community funds to reduce Father's mortgage. *See Bell-Kilbourn*, 216 Ariz. at 524, ¶¶ 10, 12. Father cites *Valento* for the proposition that community payments toward *interest* on separate property do not create a community lien. *Valento*, 225 Ariz. at 481, ¶ 13 n.4. In *Valento*, however, the court distinguished between payments against interest and payments against principal; the community is entitled to "the increased equity resulting from payments that reduced the mortgage principal." *Id.* at ¶ 13.

**¶23** The record indicates that community funds were used to reduce Father's mortgage from $334,800 upon purchase to $321,195.06 at the time the petition for dissolution was filed. The court did not make findings as to the value of the community's interest in the mortgage payments and increase in the property's value. The only evidence of the marital residence's increase in value came from Mother's testimony, and she testified that a real estate agent "gave an estimate of approximately $450,000." Father did not dispute Mother's testimony and did not provide evidence or testimony as to a different valuation. We vacate the court's finding that Mother was not entitled to a share of the increased equity in the marital residence and remand for the court to calculate the community's share of the increased equity from reduction of the mortgage and any increase of the property's value during marriage, and if appropriate, to award an equalization payment to Mother accordingly.

### B. Father's Student Loans

**¶24** The community is entitled to reimbursement for payments made with community funds to satisfy Father's separate debt obligations.

---

[3] Mother has not challenged on appeal the validity of the disclaimer deed, despite not being provided a Russian translation of the document and only receiving information about its contents and implications from Father.

*See DeLuna v. Petitto*, 247 Ariz. 420, 425, ¶ 21 (App. 2019). Father testified that he made a lump-sum payment of "$27,000 and change" in January 2017 toward his outstanding student loans, which extinguished that debt. The court found a community lien for $27,000 and awarded Mother an equalization payment for half of that amount, but denied Mother an equalization payment for the community interest in any prior monthly student debt payments Father made after marriage using community earnings. The court cited no reason and Father makes no argument to support why any of these monthly payments should be treated differently than the lump-sum payment. Father acknowledges that community funds were used to make monthly payments in addition to the January 2017 lump-sum payment. We therefore vacate the court's order denying Mother an equalization payment and remand for the court to calculate the amount of community funds paid toward Father's student loans and make a property distribution in line with this analysis.

### III.    Attorneys' Fees at Family Court

¶25    The family court denied Mother and Father's respective requests for attorneys' fees and costs, from which Mother appeals. We review the court's denial of a request of attorneys' fees for an abuse of discretion. *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008). "[W]e defer to the court's factual findings so long as there is competent evidence to support them." *Quijada v. Quijada*, 246 Ariz. 217, 222, ¶ 13 (App. 2019). An abuse of discretion exists when the reasons given by the court cannot be supported by law, are clearly untenable, or amount to a denial of justice. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006).

¶26    Under A.R.S. § 25-324, the court may order a party to pay a reasonable amount for attorneys' fees and costs to the other party "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." The family court has discretion to deny a request even after considering these statutory factors. *See Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 9 (App. 2014).

¶27    The court found a "substantial disparity" in financial resources, noting that Father "has considerably more resources available to contribute toward [Mother's] attorney fees and costs." The court then found that both parties "acted unreasonably in the litigation," citing the parties' respective positions on parenting time, legal decision-making authority, and spousal maintenance. A review of the record, however, does not support a finding that Mother took unreasonable positions in litigation

in requesting temporary spousal maintenance and an unequal division of parenting time. The record does, however, support the court's finding of the substantial disparity in finances. Father's control over the finances throughout the marriage amplified this disparity, further impairing Mother's ability to pay fees and costs incurred in the proceedings. Accordingly, we conclude that the court's denial of Mother's request for attorneys' fees and costs amounts to an abuse of discretion.

### IV. Attorneys' Fees on Appeal

¶28 Both parties request attorneys' fees on appeal pursuant to A.R.S. § 25-324. Neither party took unreasonable positions on appeal, although Father's Answering Brief misquoted the decree of dissolution in a misleading manner by neglecting to indicate that language negative to Father had been omitted. As noted, the record indicates that Father earns significantly more than Mother largely because Father's actions severely curtailed Mother's earning ability throughout the marriage. We will therefore award Mother a reasonable amount of attorneys' fees upon compliance with ARCAP 21. Because Mother prevailed in increasing the amount of the judgment in her favor, we also award Mother her taxable costs "in both courts" upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

## CONCLUSION

¶29 For the foregoing reasons, we vacate the legal decision-making order, the order denying equalization payments to Mother related to repayment of Father's student loans and increased equity in the marital residence, and the denial of Mother's request for attorneys' fees and costs; we remand for reconsideration consistent with this decision. Mother is awarded her reasonable attorneys' fees on appeal pursuant to our discretion under A.R.S. § 25-324 and her costs pursuant to A.R.S. § 12-342 upon compliance with ARCAP 21(b).



AMY M. WOOD • Clerk of the Court
FILED: AA