NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CHRISTINA MARIE BURGER, *Petitioner/Appellant*,

*v.*

TY WALDREN, *Respondent/Appellee*.

No. 1 CA-CV 22-0764 FC
No. 1 CA-CV 23-0210 FC
(Consolidated)
FILED 11-30-2023

Appeal from the Superior Court in Maricopa County
No.  FC2021-094839
The Honorable Charlene D. Jackson, Judge

**REVERSED IN PART AND REMANDED**

COUNSEL

Law Offices of Vescio & Seifert, P.C., Glendale
By Theresa L. Seifert
*Counsel for Petitioner/Appellant*

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley David Murray
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

_____

**F O S T E R**, Judge:

¶1        Christina Marie Burger appeals the superior court's dissolution decree ordering the sale of real property and an equal distribution of the proceeds. She also challenges the denial of her motion to alter or amend the decree and the court's reduced attorneys' fee award. For the following reasons, the superior court's ruling ordering the distribution of real property sale proceeds is reversed and the case is remanded for proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        Burger purchased real property in 2010 before the parties married. Ty Waldren, her soon to be husband, contributed $3,000 towards the down payment. Waldren did not sign the purchase contract, was not listed on the warranty deed, and did not sign any of the documentation provided by the title agency. Only Burger's name appeared on the deed, which identified her as "a single woman."

¶3        The parties married on October 12, 2011. They lived together in the property as their marital residence.  Waldren made the mortgage payments.

¶4        Burger petitioned for dissolution in October 2021. In the joint pre-trial statement, Burger requested the superior court award her the marital residence as her sole and separate property because she purchased it before marriage and the property was titled in her name only. Burger acknowledged that Waldren was entitled to an equitable lien of $39,512.55, using the formula in *Drahos v. Rens*, 149 Ariz. 248 (App. 1985) and *Barnett v. Jedynak*, 219 Ariz. 550 (App. 2009), plus reimbursement for his $3,000 down payment contribution. Waldren conceded the property was "technically" Burger's sole and separate property but asked for a 50% equitable lien not calculated using the *Drahos/Barnett* formula. Waldren asserted that, at the time of the property purchase, he believed the parties were taking title in both names, intended to purchase the home and upgrade it with money

borrowed from his parents, sell it to buy a bigger home, and then repay his parents once the house was sold. He also asserted that he paid the $3,000 down payment with his sole and separate funds and paid all the mortgage payments before and during the marriage. In addition to the 50% equitable lien on the home, Waldren also asked that his parents be paid the approximately $50,000[1] they "lent the community to improve the home." Burger denied any knowledge of a loan or agreement to repay Waldren's parents for improvements to the property.

¶5        After trial, the superior court ruled that the real property was community property. Despite noting that the home was titled only in Burger's name, the court found the parties "purchased the home together and intended to own the home together." The court also found that Waldren "never disclaimed the deed" and that he "presented clear and convincing evidence that the parties intended to own the property together and equally." In the Decree of Dissolution, the court ordered the property be sold and the equity be divided equally.[2] The court also found that Burger was unaware of a contract between Waldren and his parents for reimbursement of the approximately $50,000 for home improvements and was not a party to that contract; thus, Burger was not responsible for repayment of that debt.[3]

¶6        Additionally, the superior court found that Waldren acted unreasonably during the litigation and awarded Burger $7,500 of the $25,067.50 she requested in attorneys' fees. The court awarded this reduced amount after determining that Burger's position on the marital home had been unreasonable. Burger moved to alter or amend the decree, which the superior court denied.

¶7        This Court has jurisdiction over Burger's timely appeal under A.R.S. § 12-2101(A)(1).

## DISCUSSION

---

[1] In the joint pre-trial statement, Waldren advised the court his parents spent $54,425.87, but his mother testified the actual costs were $50,631. The record shows additional charges of $3,794.87 for interest.

[2] At the time of the trial, the property was under contract for $300,000.

[3] Waldren does not cross-appeal this ruling.

I.      **The superior court erred by holding that the real property was a community property asset.**

¶8           Burger argues the superior court erred in finding Waldren was entitled to half the sale proceeds of her sole and separate real property. A court's characterization of property as community or separate is reviewed *de novo*. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000). A court's order distributing property is reviewed for an abuse of discretion. *Saba v. Khoury*, 253 Ariz. 587, 590, ¶ 7 (2022). "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *State v. Jackson*, 208 Ariz. 56, 59, ¶ 12 (App. 2004).

¶9           The status of property is established at the time of acquisition. *Bender v. Bender*, 123 Ariz. 90, 92 (App. 1979). Property status does not change "except by agreement or operation of law." *Id.* Spouses may convey their separate or community property interests to one another, but the conveyance must be by a written instrument and have contemporaneous supporting conduct. *Id.* at 93. Property acquired during marriage may be acquired as, or converted to, sole and separate property by way of a disclaimer deed in which one spouse states he or she has no interest in the property acquired by the other spouse. *See, e.g.*, *id*. at 93-94; *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 524, ¶¶ 10-11 (App. 2007).

¶10          Waldren concedes the superior court erred in finding the martial residence was community property and that whether Waldren signed a disclaimer deed was irrelevant. He argues, however, that the court reached the right result because the parties owned the property as tenants in common at the time of purchase and each party owned a 50% interest as sole and separate property. He argues that dividing the property held as tenants in common would have resulted in the same equal distribution that the court used. Waldren waived this tenancy-in-common argument by failing to raise it before the superior court. *See Odom v. Farmers Ins. Co. of Ariz*., 216 Ariz. 530, 535, ¶ 18 (App. 2007) (stating that "[g]enerally, arguments raised for the first time on appeal are untimely and deemed waived."). Regardless, Waldren does not dispute that the deed was solely in Burger's name, and the parties were not married at the time of purchase. "Moreover, a joint tenancy is not created in Arizona unless it clearly appears that the grantees have agreed to accept the conveyance as joint tenants. *Bostwick v. Jasin*, 170 Ariz. 15, 17 (App. 1991) (citation omitted). No evidence supports an argument that the parties jointly purchased the home at the time of the acquisition. A.R.S. § 33-431. The record clearly establishes that the property was Burger's separate property.

¶11 When a spouse owns real property before the parties' marriage, that real property and any increase in value is the separate property of the acquiring spouse. *See* A.R.S. § 25-213(A). Even if community funds are expended on separate property, the community does not acquire an interest in the title of the property, but instead has only a potential claim for reimbursement for any expenditure of community funds. *Bourne v. Lorde*, 19 Ariz. App. 228, 231 (1973); *see also Drahos*, 149 Ariz. at 249-50 (recognizing the community's right to an equitable lien against separate property when community funds are used to pay the mortgage on the separate property).

¶12 Applying the formula from *Drahos,* the court must apportion to the community the increase in a spouse's separate property value attributable to the community's mortgage payments. 149 Ariz. at 250. "The community property equitable lien interest is determined by adding the principal balance paid by the community to the product of the community property principal payments divided by the purchase price times the appreciation in value." *Id*. The formula from *Drahos* was adjusted in *Barnett* to account only for post-marriage appreciation and uses the appraised value of the separate property as of the date of marriage rather than the purchase price. 219 Ariz. at 555, ¶ 21. Here, it is undisputed that the purchase price and the value as of the date of marriage are the same. In *Saba*, the Arizona Supreme Court held that courts must use the *Drahos/Barnett* formula as a starting point to achieve substantial justice in calculating a marital community's equitable lien on a spouse's separate property. 253 Ariz. at 592, ¶ 14.

¶13 Waldren concedes that Burger's calculations using the *Drahos/Barnett* formula were correct. But, because the court improperly concluded the marital residence was community property, it did not use the formula to calculate the marital community's equitable lien on Burger's separate real property.

¶14 Waldren argues the marital community contributed money and labor to Burger's separate property with the improvements made by his parents. In such cases, the community "is entitled to share in the enhanced value of that property." *Saba*, 253 Ariz. at 592, ¶ 15 (quoting *Honnas v. Honnas*, 133 Ariz. 39, 40 (1982)). But, the spouse claiming he or she increased the value of the other spouse's separate property through community labor and funds has the burden of showing the increased value. *Hefner v. Hefner*, 248 Ariz. 54, 60, ¶ 17 (App. 2019); *Walker v. Walker*, No. 1 CA-CV 23-0036 FC, 2023 WL 6397297, at *5, ¶ 29 (Ariz. App. Oct. 3, 2023).

¶15　　　　Here, the record shows that Waldren's father volunteered to, and performed, labor to improve the home, not Waldren himself. And Waldren did not offer any evidence at trial about how much of the funds used to make improvements to the house contributed to the increased value of the home. In the decree, the superior court noted that "substantial upgrades" to the home were made but there were no factual findings about whether those improvements increased the value of the property. And although an appraisal in evidence shows that the interior of the home "appear[ed] to have been updated," the parties did not direct the superior court's attention to any evidence from which it could determine the difference in increased value attributable to market forces compared to home improvements or a combination thereof. Waldren did not meet his burden on this issue.

¶16　　　　Given the parties' acknowledgment that the property is Burger's separate property and that her *Drahos/Barnett* calculation is accurate this case is remanded, directing the superior court to order a $39,512.55 distribution to Waldren as his share of the community's equitable lien, plus $3,000 to reimburse him for his contribution to the down payment, for a total of $42,512.55.

## II.　　The superior court's order to sell the marital property is moot.

¶17　　　　As to the sale of the marital residence, Burger argues the superior court could not order the sale of her separate real property. Because the marital residence has now been sold, this issue is moot. *Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4 (App. 1988) (noting that a court's decision is moot for appellate purposes when appellate action would have no effect on the parties due to a change in circumstances before the appellate decision).

## III.　　The award of attorneys' fees must be recalculated.

¶18　　　　Burger challenges the attorneys' fee award, arguing that the superior court reduced her requested fee amount based on its erroneous finding that her position regarding the marital residence was unreasonable. This Court agrees.

¶19　　　　An award of attorneys' fees is reviewed for an abuse of discretion. *Hefner*, 248 Ariz. at 57, ¶ 6. Under A.R.S. § 25-324, the superior court may award attorneys' fees to one party based on unreasonable positions taken by the other party. *Magee v. Magee*, 206 Ariz. 589, 591 n.1 (App. 2004); *Clark v. Clark*, 239 Ariz. 281, 283, ¶¶ 10-12 (App. 2016). The

superior court has discretion regarding the amount ultimately awarded. *Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 362 (App. 1987).

¶20 Here, in analyzing Burger's application for fees, the superior court found Waldren acted unreasonably and that Burger's position on the marital home was unreasonable. But as discussed above, Burger's position on the marital home was not unreasonable, and her calculation of the community's equitable lien was accurate.

¶21 It is unclear from the court's ruling to what extent it reduced Burger's attorneys' fee award based on her position regarding the marital home. Accordingly, this issue is remanded for the superior court to reconsider the attorneys' fee award.

## CONCLUSION

¶22 For the foregoing reasons, the superior court's ruling ordering an equal division of the sale proceeds is reversed. On remand, the superior court shall enter an order awarding Waldren $39,512.55 for his share of the community's equitable lien and $3,000 for reimbursement of his down payment contribution. The superior court should also reconsider the amount of Burger's attorneys' fee award.

¶23 After considering the parties' relative financial resources and their positions on appeal pursuant to A.R.S. § 25-324, Burger's request for costs and reasonable attorneys' fees is granted upon compliance with Arizona Rule of Civil Appellate Procedure 21.

