200 P.3d 1047

**In re the Marriage of Joshua Cody BARNETT, Petitioner/Appellee,**

v.

**Karry Virginia JEDYNAK, Respondent/Appellant.**

**No. 1 CA–CV 07–0558.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 8, 2009.

Karry Virginia Jedynak, Glendale, Appellant in propria persona.

Gillespie Shields & Associates PC, By DeeAn Gillespie and Mark A. Shields, Mesa, Attorneys for Appellee.

## OPINION

OROZCO, Judge.

¶ 1 The issue in this appeal is the extent of the community's interest in a home Appellee Joshua Cody Barnett (Husband) acquired prior to the marriage. Because we conclude that the formula used by the trial court to calculate the community interest in the property would deprive the community of its full equitable interest in the property, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Husband and Appellant Karry V. Jedynak (Wife) were married April 1, 2004. According to Wife, the couple lived together beginning in September 1999.

¶ 3 During the marriage, the parties and their children lived in a home Husband purchased in 2002 for $125,000. Wife claims that from October 2003 up to and including the date of their marriage in April 2004, Husband was unemployed and Wife was the sole support of the household and family. The Petition for Dissolution was filed on June 14, 2006.

¶ 4 The decree of dissolution stated that the marital residence was Husband's separate property, except that the community "has a lien against the property for the value of principal payments made during the marriage by the community and for the increase in value during the marriage." It ordered that an appraisal be done to determine the property's current fair market value. The court ordered that once the appraisal was completed, the mortgage balance of $120,130 and other liens be deducted from the fair market value to determine remaining equity. That remaining equity was then to be "divided equally by the parties."

¶ 5 Husband filed a Motion to Alter or Amend Judgment, arguing that a "value-at-dissolution" formula should be used to calculate the community's interest in the property, citing *Drahos v. Rens*, 149 Ariz. 248, 250, 717 P.2d 927, 929 (App.1985). Husband further noted that in *Drahos* there was no appreciation in value prior to the marriage, but in this case, his home appreciated prior to the marriage. Therefore, Husband argued, the formula applied in *Drahos* should be adjusted to give Husband full credit for all increase in value prior to marriage as his sole and separate property. Husband then proposed his own formula for determining the community's interest in the home.

¶ 6 In response, Wife argued *Drahos* did not apply because she paid the mortgage prior to marriage when Husband was unemployed. She requested an equal division, per the court's original order.

¶ 7 Neither party requested oral argument, nor is there any indication in the record that a hearing was held. The trial court granted Husband's Motion to Alter or Amend Judgment regarding the marital residence. The court directed Husband to "lodge a form of order consistent with the relief [requested]." The trial court signed the order Husband submitted, directing Husband to have two appraisals done—one valuing the property as of the date of the marriage and the other as of August 7, 2006 (the date Wife was served with the petition for dissolution)—and largely adopting Husband's proposed formula for calculating the community's interest in the property. The formula adopted by the trial court for determining the community's lien on the property was:

> Where "A" equals the down payment made by Husband, plus principal payments made by Husband prior to marriage, plus the appraised value as of the date of the marriage minus the mortgage balance;

Where "B" equals the appraised value as of the date of marriage;

Where "C" equals the community's contribution to principal; and

Where "D" equals the value at the date of dissolution, the community's lien is equal to:

$$C/[A+C] \, X[D-B]$$

¶ 8 Wife timely appealed. The sole issue on appeal is how to determine the community's interest in the home. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section § 12–2101.B (2003).

## DISCUSSION

### Sufficiency of Record

¶ 9 As an initial matter, Husband notes that Wife failed to provide transcripts of any hearings. Although in the absence of a transcript, this court may not consider questions pertaining to evidence or findings of fact, this court still considers questions of law raised by the record transmitted to this court. *Brousseau v. Fitzgerald*, 138 Ariz. 453, 457, 675 P.2d 713, 717 (1984). Where all the essential elements for the determination of the issue raised by Wife are in the record before us, we rely on the record in making our decision. *Id.* In this case, there is no indication in the record that a hearing was requested or held on this issue. Therefore, we find the record sufficient for us to consider the issue on the merits.

### Standard of Review

¶ 10 The trial court has broad discretion in apportioning community property between the parties at dissolution to achieve an equitable division. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13, 167 P.3d 705, 708 (App.2007). The appellate court will not disturb the trial court's apportionment of community property in a marital dissolution absent an abuse of discretion. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2, 118 P.3d 621, 622 (App.2005). "An abuse of discretion may occur when a trial court commits an error of law in the process of exercising its discretion." *Id.*

### Mortgage Payments Prior to Marriage

¶ 11 Wife asserts the community is entitled to an interest in the home's appreciation prior to the marriage because she supplied the funds to pay the mortgage payments during periods when Husband was unemployed prior to the marriage. She asserts that "even prior to the marriage, the family ... ran as one and separate property and community property were undistinguishable due to the manner in which finances were conducted together."

¶ 12 Wife does not argue that by cohabitating, the parties created a common-law marriage that imposed community property obligations; even if she did make that argument, Arizona does not recognize common-law marriages unless they are entered into in another state in which they are authorized. *Smith v. Mangum*, 155 Ariz. 448, 450, n. 1, 747 P.2d 609, 611, n. 1 (App.1987); A.R.S. § 25–111 (2007). "[I]n the absence of an express or implied agreement, no quasi-marital property rights accrue as a result of cohabitation" in Arizona. *Mangum*, 155 Ariz. at 450, 747 P.2d at 611.

¶ 13 There is no evidence of an express agreement between the parties to acquire the home jointly. Nor did the trial court find any implied agreement to acquire the home jointly. To determine whether there was an implied agreement, the court looks to the parties' conduct. *In re Marriage of Pownall*, 197 Ariz. 577, 582, ¶ 18, 5 P.3d 911, 916 (App.2000). Here, it is undisputed that Husband made the down payment on the home and took title in his name only. Wife offered no evidence that she participated in the acquisition of the home. Even accepting Wife's argument that she made some pre-marriage mortgage payments, the parties' conduct does not evidence an implied agreement to acquire the property jointly. *Id.* at ¶¶ 20–21.

### Calculating Community Interest

¶ 14 In Arizona, property acquired by a spouse prior to marriage is that spouse's separate property and retains this character after the marriage. *Drahos*, 149 Ariz. at 249, 717 P.2d at 928. However, when community

funds are later used to make mortgage payments on the property, the community is entitled to some form of compensation and has an equitable lien against the property. *Id.*

¶ 15 In some early cases in Arizona, the community was entitled only to reimbursement for increased equity due to payments toward the principal. *See, e.g., Hanrahan v. Sims,* 20 Ariz.App. 313, 317, 512 P.2d 617, 621 (1973). However, in *Drahos,* this court held that when community funds were used to decrease the principal owed on separate property, the community was entitled not only to reimbursement for the money applied to the principal, but also to a percentage share of any increase in the value of the property due to "the general trend of rising real estate values." *Drahos,* 149 Ariz. at 250, 717 P.2d at 929.

¶ 16 In *Drahos,* the husband purchased the property the day before the marriage. *Id.* at 249, 717 P.2d at 928. Therefore, the increase in value from the date of purchase to the date of dissolution was the same as the increase in value from the date of the marriage. The court adapted a formula from *In re Marriage of Marsden,* 130 Cal.App.3d 426, 181 Cal.Rptr. 910 (Cal.Ct.App.1982). *Drahos,* 149 Ariz. at 250, 717 P.2d at 929. In *Drahos,* the court held that the community property lien interest was determined "by adding the principal balance paid by the community to the product of the community property principal payments divided by the purchase price times the appreciation in value." *Id.* Since Husband's proposed formula is represented in the trial court's order as an algebraic equation, we illustrate the *Drahos* formula as follows:

Where "A" = appreciation in value of the property since purchase;

Where "B" = the purchase price of the property; and

Where "C" = community contributions to the principal,

The value of community's lien on the property is:

$$C + [C/B \times A]$$

¶ 17 However, the court in *Drahos* noted that its formula did not take into account any pre-nuptial appreciation, "such appreciation being impossible in this case." *Id.* at n. 1. Should there be pre-nuptial appreciation, the court stated that "the separate property interest should be given credit for pre-nuptial appreciation." *Id.* (referencing *Marsden,* 130 Cal.App.3d 426, 181 Cal.Rptr. 910).

¶ 18 In *Marsden,* the property appreciated both before and during marriage. *Marsden,* 130 Cal.App.3d at 436, 181 Cal.Rptr. 910. The court elected to credit the separate property interest with the prenuptial appreciation. *Id.* at 438, 181 Cal.Rptr. 910. Therefore, the community interest was calculated as 1) reimbursement for contributions to principal plus 2) the product of the community property principal payments divided by the purchase price times the appreciation in value *after marriage. Id.* at 439, 181 Cal.Rptr. 910. Translated into an algebraic equation, the *Marsden* formula is the same as in *Drahos,* except that "A" = appreciation in the value of the property during the marriage.

¶ 19 Although invoking *Drahos,* Husband suggested a formula at odds with *Drahos* and *Marsden.* Most significantly, the formula proposed by Husband and adopted by the trial court eliminates the reimbursement to the community for contributions to the principal. Secondly, in calculating the community's share of the increase in the value of the property during the marriage, the formula adopted by the trial court adds the community's contributions to the principal into the calculation of Husband's equity as of the time of the marriage to create the denominator, thereby shrinking the fraction and the result. Neither Husband nor the trial court cite any authority or supply any explanation for eliminating the reimbursement, nor for the addition of the community's payments to principal to the calculation of Husband's equity at the time of marriage.[1]

---

1. It appears Husband erroneously added "C" to "A" in calculating the denominator, instead of adding "C" to the calculation of the community's interest in the increase in value during the marriage, and that the trial court failed to correct the error.

¶ 20 Although we do not adopt the trial court's formulation, we do find support in *Drahos* for adjusting the *Drahos/Marsden* formula to more fully compensate Husband for prenuptial appreciation. The *Marsden* formula awards the community a percentage of post-nuptial appreciation, rather than all appreciation since purchase, but calculates that percentage as a function of the original purchase price of the home. We conclude that since the community's interest in the home begins on the date of the marriage, the relevant value for determining the community's interest in later appreciation is the value on the date of the marriage.

¶ 21 We therefore hold that when separate property appreciates both prior to and after the marriage date, the community's interest in any post-nuptial appreciation should be a factor of the community's contributions to principal divided by the value of the property at the time of marriage, rather than at the time of purchase. We reverse and remand to the trial court with instructions to value the community's lien on the property as follows:

Where "A" = appreciation of the property during the marriage (calculated here as the value as of August 6, 2006, minus the value as of April 1, 2004); [2]

2. This is the same value as "[D–B]" in the formula adopted by the trial court.

Where "B" = the appraised value of the property as of the date of the marriage (April 1, 2004);

Where "C" = the community's contributions to principal, the value of the community's lien is:

C + [C/B X A]

## CONCLUSION

¶ 22 The formula suggested by Husband and adopted by the trial court for determining the community's interest in the marital home unfairly deprives the community of reimbursement for its contributions to the principal and shrinks the community's lawful percentage of the home's appreciation in value during the marriage. Therefore, we reverse and remand to the trial court to determine the value of the community interest in the home, as specified in this opinion.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and SHELDON H. WEISBERG, Judge.