IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**HANI W. SABA**,
*Petitioner/Appellant/Cross-Appellee,*

*v.*

**SAWSAN KHOURY**,
*Respondent/Appellee/Cross-Appellant.*

No. CV-21-0023-PR
Filed September 14, 2022

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Melissa Iyer Julian, Judge
No. FC2017-052690
**AFFIRMED**

Opinion of the Court of Appeals, Division One
250 Ariz. 492 (App. 2021)
**VACATED**

———————————

COUNSEL:

Keith Berkshire (argued), Kristi A. Reardon, Erica Leavitt, Alexandra Sandlin, Berkshire Law Office, PLLC, Tempe, Attorneys for Hani W. Saba

Sandra Burt, Burt Feldman & Grenier, Scottsdale; and Amy M. Hoffman (argued), Jardine, Baker, Hickman & Houston, Phoenix, Attorneys for Sawsan Khoury

———————————

CHIEF JUSTICE BRUTINEL authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE MONTGOMERY, and KING joined.

———————————

CHIEF JUSTICE BRUTINEL, Opinion of the Court:

¶1        In this marriage dissolution case, we are asked to determine the appropriate method for establishing the marital community's interest in separate property.  More specifically, we consider whether the formula laid out in *Drahos v. Rens*, 149 Ariz. 248 (App. 1985), and refined in *Barnett v. Jedynak*, 219 Ariz. 550 (App. 2009) (the "*Drahos/Barnett* formula"), is an appropriate method of establishing the community's equitable lien on a spouse's separate property, providing for a fair division of the separate property's increase in value proportionate to the amount the community contributed to the property.

¶2        We hold that trial judges should begin by using the *Drahos/Barnett* formula and should then adjust the calculation to account for the community's overall contribution of labor and funds to the separate property along with the market appreciation of the property.  In so holding, we do not limit trial judges' discretion to consider the value the community's contributions actually added to the value of the separate property to fairly determine the amount to which the community is entitled.

## I.        BACKGROUND

¶3        Hani Saba ("Husband") and Sawsan Khoury ("Wife") married in 2009.  In 2010, the couple purchased two Phoenix houses in addition to their existing marital residence.  They used community funds to make the down payment on the home located on Leisure Lane ("Leisure Lane").  The other home, located on 30th Way ("30th Way"), was purchased using both community funds and Wife's separate funds.  Both properties were titled in Wife's name only, and Wife was the sole borrower on the loans secured by the properties.  Because Husband had poor credit, and because Wife was the sole borrower on the loans, he signed disclaimer deeds for both properties, disclaiming any "right, title, interest, [or] claim" to either property.

¶4        Husband filed a petition for dissolution in April 2017.  After a two-day trial,  the trial court, using the *Drahos/Barnett* formula, ordered that the community be reimbursed for the full value of its contributions reducing the principal balance of the mortgages, along with a share of the increase in the value of each home proportionate to the percentage of the principal balance of the mortgage the community paid.  Specifically, the court concluded that because the community paid 19.88% of the balance on the Leisure Lane loan, it should receive 19.88% of the appreciation in the home's value that occurred during the marriage in addition to the $39,741.29 it paid toward the principal, resulting in a lien in the amount of

$68,588.02. Similarly, the court calculated the community's lien on 30th Way to be $47,539.25, reflecting the initial contribution ($25,176.70) plus the proportionate share of appreciation (14.8% of $150,999).

¶5        Husband appealed, arguing the court's application of the *Drahos/Barnett* formula was improper. He claimed the community was entitled to the total amount it contributed along with all market-based appreciation proportionate to the percentage of funds contributed by the community. Thus, he contended, because contributions to Leisure Lane were 100% community funds, the community was entitled to 100% of the appreciation, citing the court of appeals' decision in *Femiano v. Maust*, 248 Ariz. 613 (App. 2020). The court of appeals disagreed and affirmed. *Saba v. Khoury*, 250 Ariz. 492, 494 ¶ 1 (App. 2021). This petition followed.

¶6        We accepted review to consider how the marital community should be reimbursed for its contributions to separate property during the marriage, a question of statewide importance and likely to recur. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.        DISCUSSION

¶7        We review the trial court's distribution of property for an abuse of discretion. *See Barnett*, 219 Ariz. at 553 ¶ 10. The determination of the amount of the community interest in separate property resulting in an equitable lien is a mixed question of fact and law, *Valento v. Valento*, 225 Ariz. 477, 481 ¶ 11 (App. 2010), so we defer to the trial court's factual findings but review legal conclusions de novo, *see Helvetica Servicing, Inc. v. Pasquan*, 249 Ariz. 349, 352 ¶ 10 (2020). We view the evidence in the light most favorable to upholding the trial court's judgment. *See Cooper v. Cooper*, 130 Ariz. 257, 260 (1981).

### A.

¶8        This Court has long recognized that a marital community is entitled to reimbursement for its contributions to a spouse's separate property. *See, e.g., Lawson v. Ridgeway*, 72 Ariz. 253, 261 (1951). Such reimbursement is secured by an equitable lien against the separate property. *See id.* at 262; *Hanrahan v. Sims*, 20 Ariz. App. 313, 317 (1973). In *Lawson*, this Court concluded that the way to determine the value of the lien for real property is by measuring the separate property's total increase in

value resulting from the community's contributions—the value-at-dissolution approach. [1] 72 Ariz. at 262.

¶9         It can be difficult, however, to determine whether a property's increase in value is due to the community's contributions or to other causes like simple market appreciation—a problem this Court faced in *Cockrill v. Cockrill*, 124 Ariz. 50 (1979).  There, the Court first affirmed that increases in separate property's value during the marriage are presumed to be the result of the community's contributions, absent clear and convincing evidence to the contrary.  *Id.* at 52.  But in so holding, the Court acknowledged that "[s]eldom will the . . . increase in value of separate property during marriage be exclusively the product of the community's effort or exclusively the product of the inherent nature of the separate property." *Id.* at 53.  For that reason, this Court abandoned the "all or none rule" previously applied by courts, which classified the separate property's increase in value as either entirely community property or entirely separate property.  *Id.* at 53–54.  Instead, the Court held that "profits, which result from a combination of separate property and community labor, must be apportioned accordingly." *Id.* at 54.  Acknowledging that various methods of apportionment may be suitable depending on the circumstances of each case, this Court directed trial courts to select "whichever will achieve substantial justice between the parties." *Id.*

¶10         In *Honnas v. Honnas*, 133 Ariz. 39, 41 (1982), this Court affirmed *Lawson*'s value-at-dissolution approach, *see supra* ¶ 8, to determine the value of the community's equitable lien on a spouse's separate real property.  But this Court reiterated its conclusion in *Cockrill* recognizing that property appreciation could be due to multiple factors, discarding the "all or none rule," and holding that "profits, which result from a combination of separate property and community labor, must be apportioned accordingly." *Id.* at 40 (quoting *Cockrill*, 124 Ariz. at 54).  The *Honnas* Court went on to find that even where "much of the increase in value [of the residence was] likely due to inflation," the community was "entitled to share in the enhanced value" of the separate property because community funds and labor "were used for the benefit of the separate property." *Id.*

¶11         Subsequently, in *Drahos*, the court of appeals considered how mortgage payments paid by the community factor into the value-at-

---

[1] The "amount-spent" approach, by contrast, measures the value of the community's lien based upon the amount the community contributed to the separate property.

dissolution approach. *See* 149 Ariz. at 250. The marital community sought reimbursement for mortgage payments and repairs made to the property, but there was no evidence that the increased value of the residence was in any way attributable to the community contribution. *Id.* Nonetheless, the court read *Honnas* to hold that the community was entitled to share in the equity simply "due to the expenditure of funds." *Id.* (quoting *Honnas*, 133 Ariz. at 40). The court applied the formula from *In re Marriage of Marsden*, 130 Cal. App. 3d 426, 438 (1982), which the court found adequately apportioned to the community the increase in the property's value attributable to the community's mortgage payments. *Drahos*, 149 Ariz. at 250. The *Drahos* court applied the formula as follows:

> The separate property interest is determined by adding the down payment to the product of the down payment plus principal payments made with separate property divided by the purchase price times the appreciation invalue [sic]. The community property equitable lien interest is determined by adding the principal balance paid by the community to the product of the community property principal payments divided by the purchase price times the appreciation in value.

*Id.* As the court explained, the formula divides the property's appreciation in value "in proportion to the contribution to [principal]." *Id.*

**¶12** The court of appeals modified that formula in *Barnett*. *See* 219 Ariz. at 555 ¶ 21. In *Barnett*, the court recognized that the *Drahos* formula improperly awards the community pre-nuptial appreciation by factoring in the total appreciation in the property's value from the date of purchase, rather than from the date of the marriage. *Id.* ¶¶ 20–21. It adjusted the formula to account for only the post-marriage appreciation. *Id.* ¶ 21. The court's modified formula can be summarized as follows:

$$C + (C/B \times A)$$

> Where "A" is appreciation in the separate property's value during the marriage.[2]

---

[2] Appreciation is typically calculated by subtracting the value of the property on the date of purchase from the appraised value on the date of service of the petition for dissolution. However, in a case such as this one, "A" should reflect the difference in the property's appraised value at service and the property's value on the date the disclaimer deed took effect.

Where "B" is the appraised value of the separate property as of the date of the marriage.

Where "C" is the community's contributions to principal.

*Id.*

**¶13** Arizona courts have routinely applied the *Drahos/Barnett* formula to measure the value of a community's equitable lien when the community makes some of the mortgage payments on a spouse's separate property. *See, e.g.*, *O'Brien v. O'Brien*, No. 1 CA-CV-19-0268, 2020 WL 3970856, at *1 ¶ 4 (Ariz. App. July 14, 2020) (mem. decision). But until now, this Court has never opined on the use of the *Drahos/Barnett* formula, its application, or whether the community is entitled to a share of the equity in the property even where the community contribution did not actually enhance its value.

**B.**

**¶14** We now hold that the *Drahos/Barnett* formula is an appropriate starting point for courts to calculate a marital community's equitable lien on a spouse's separate property.[3]

**¶15** When a marital community contributes its money or labor to a spouse's separate property, it "is entitled to share in the enhanced value of [that] property." *Honnas*, 133 Ariz. at 40. The marital community can make improvements or additions to the home, and in such cases the community is entitled to a fair return on its investment reflecting its contribution to the increase in the property's value. *Id.* Likewise, the community can simply pay the mortgage payments, resulting in a reduction of the mortgage's principal balance, which, though not increasing the property's value, increases the separately owned equity in the property. *See Drahos*, 149 Ariz. at 250 (concluding that the value-at-dissolution formula applies "when community funds are used to benefit but not necessarily improve separate property"). In our view, a fair return on the amount paid to reduce the principal balance of the mortgage would be the rate of return that money would have otherwise earned for the community

---

Likewise, "B" should reflect the appraised value of the property on either the date of the marriage or the date the deed became effective, whichever is later.

[3] The question of whether and to what extent the formula applies in cases where the separate property has *depreciated* in value is not before us, and we do not decide it here.

and may be reimbursed by a share of the increase in the home's value proportionate to the amount paid to reduce the principal balance of the mortgage. The *Drahos/Barnett* formula accounts for this return: it reimburses the community for the contributions made and apportions a share of the property's increase in value based on those contributions. *See id.*; *Barnett*, 219 Ariz. at 555 ¶ 21. The *Drahos/Barnett* formula therefore properly recognizes the nature of the separate property as separate while apportioning a fair and equitable reimbursement to the community. *See Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 524 ¶ 12 (App. 2007) (remanding to trial court to calculate a reimbursement award that is "fair and equitable under the circumstances").

¶16    To be clear, by approving the use of the *Drahos/Barnett* formula we are not mandating that courts apply it in every case, nor must courts strictly adhere to the formula and ignore additional factors unique to each case. Neither *Drahos*, *Barnett*, nor any other case requires such a result. In fact, our caselaw is clear that trial courts are "not bound by any one method, but may select whichever will achieve substantial justice between the parties." *Cockrill*, 124 Ariz. at 54. We therefore agree with Husband's assertion that the uniqueness of each circumstance cuts against strict adherence to any one formula. *Cf. Toth v. Toth*, 190 Ariz. 218, 221 (1977) (stating the legislature intended that trial courts have broad discretion in deciding what is equitable in dissolution cases). But the *Drahos/Barnett* formula is useful insofar as it provides trial courts with a consistent starting point. The formula is a baseline from which courts can evaluate whether the facts of a specific case warrant a modification of or departure from that formula.[4] If the equities do warrant such a departure, the trial court may measure the lien using a different method, but only if the equitable lien amount reflects—at a minimum—the amount of the community contribution and a division of equity reflecting the increase in value due to the community contribution consistent with a market rate of return on that contribution.

¶17    Husband's primary objection to the *Drahos/Barnett* formula is that it does not—in most cases and especially this one—"divide the community [property] . . . equitably" as required by A.R.S. § 25-318(A). But

---

[4] For example, when dealing with a community's improvements to the separate property, a fair return may be more accurately calculated by appraising the increase in the value of the home immediately before and after the improvements. Under today's decision, courts remain free to use other methods of valuing such improvements and modify the value generated by the *Drahos/Barnett* formula to account for such variances.

that objection begins with an erroneous premise. Section 25-318(A) governs *division* of community property at dissolution; it does not apply to *reimbursement* of the community's contributions to separate property, which is the issue here. We are concerned only with calculating the amount of the community's lien to be placed on Wife's separate property. *See* § 25-318(E). We agree with Husband that the valuation we arrive at should be fair and equitable, *see Bell-Kilbourn*, 216 Ariz. at 524 ¶ 12, but Husband has not shown how the *Drahos/Barnett* formula is inequitable generally or as applied here.

**¶18** Husband cites to the court of appeals' reasoning and conclusion in *Femiano* to illustrate why the *Drahos/Barnett* formula does not generate a fair reimbursement in this case. The *Femiano* court rejected the trial court's reliance on the *Drahos/Barnett* formula under a set of facts much like the facts here. 248 Ariz. at 614–15 ¶ 1. The husband and wife in *Femiano*, during the marriage, took out a mortgage on property to which the wife later disclaimed her interest via disclaimer deed. *Id.* at 615 ¶ 3. Though the property was the husband's separate property, the community made the down payment and all of the payments on the mortgage until the marriage's dissolution. *Id.* The *Femiano* court concluded that, as to assets purchased during marriage solely with community funds, the *Drahos/Barnett* formula should not apply. *Id.* at 617 ¶ 21. It reasoned that "when the community pays all costs associated with purchasing and improving the separate property, any appreciation in value and the resulting increase in equity is fully attributable to the community, and the community is thus entitled to an equitable lien for the full increase in equity." *Id.*

**¶19** We disagree with the *Femiano* court's analysis and its conclusion. The formula it introduces effectively treats separate property as community property, giving no credit for the separate ownership of the property. Again, the object is a fair *reimbursement of community funds*, not an *equitable division of property*. The holding in *Femiano* assumes that the community's contributions are the sole cause of the property's increase in value and fails to credit the separate property owner with any increase in value due to simple market appreciation.[5] We disapprove *Femiano*.

---

[5] The court of appeals in this case correctly noted that the *Femiano* court also neglected to account for the fact that the owner spouse is still liable for the balance on the loan after dissolution. *See Saba*, 250 Ariz. at 497 ¶ 17 (App. 2021). This mistakenly allocated all the benefit from the purchase of the property to the community but none of the risk.

¶20 We conclude the trial court did not err by using the *Drahos/Barnett* formula to calculate the community's reimbursement. The trial court, by its application of the formula, credited to the community its contributions to the properties along with the proportional appreciation in property value resulting therefrom. Husband fails to point to any evidence in the record showing the trial court refused to consider the value of his improvements to the rental properties. To the contrary, the trial court considered Husband's expert testimony regarding the value of his improvements to Leisure Lane but ultimately rejected Husband's claimed improvement expenses. This demonstrates the court did not apply the formula so rigidly as to discount other important factors.

### III.    CONCLUSION

¶21 We vacate the court of appeals' opinion and affirm the trial court's judgment. In our discretion, we decline to award attorney fees to either party.