NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

RAYMOND BOLKAN,
*Petitioner/Appellee*,

v.

TRINITY DONOVAN,
*Respondent/Appellant*.

No. 1 CA-CV 22-0112 FC

FILED 01-24-2023

Appeal from the Superior Court in Maricopa County
No. FC2020-095177

The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED IN PART, VACATED IN PART AND REMANDED**

COUNSEL

Law Offices of John R. Zarzynski, Phoenix
By John R. Zarzynski
*Counsel for Respondent/Appellant*

Davis Miles McGuire Gardner, PLLC, Tempe
By Douglas C. Gardner, Francis B. Espiritu
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Randall M. Howe and Judge D. Steven Williams joined.

---

**W E I N Z W E I G**, Judge:

**¶1**          Trinity Donovan ("Mother") appeals from the superior court's dissolution decree ending her marriage to Raymond Bolkan ("Father"). For the reasons set forth below, we affirm in part and vacate in part.

## FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**          Mother and Father married in 2011 and share two children. Father filed for divorce in June 2020. Among other things, he sought temporary orders for sole legal decision-making and primary-parent designation. Soon after, Mother sought and obtained an order of protection against Father, alleging multiple instances of domestic violence. The order of protection included the children, but Mother later agreed to remove them. After a temporary-orders hearing, the superior court awarded joint legal decision-making, as well as weekly and bimonthly parenting time to Father. Mother did not challenge the temporary orders.

**¶3**          A year later, the court held an evidentiary hearing in connection with the dissolution decree. Mother described several recurring instances of domestic violence dating back to 2017. Father denied the allegations. The court awarded Father joint legal decision-making. It acknowledged that Father had committed "several incidents of domestic violence" but concluded that Father's conduct did not rise to the level of "significant domestic violence." It also found that Father rebutted the statutory presumption against legal decision-making under A.R.S. § 25-403(D).

**¶4**          The court found that Father owed money to Mother and the community for marital waste, health insurance premiums and other expenses. Even so, the court ordered this debt to be offset by Father's unknown interest in the equitable lien the community held over Mother's

---

[1]          We view the facts in the light most favorable to affirming the decree. *In re Marriage of Foster*, 240 Ariz. 99, 100, ¶ 2 (App. 2016).

sole and separate properties. Mother owned two properties in Mexico before the marriage, which remained her sole and separate property at dissolution. At various points, however, the community paid the mortgage on the Mexico properties. As a result, the superior court found the community held an equitable lien over Mother's sole and separate properties.

**¶5** Mother appeals. We have jurisdiction. *See* Ariz. Const. art. 6, § 9 and A.R.S. § 12-120.21(A)(1).

## DISCUSSION

**¶6** Mother raises five issues on appeal.

*I. Legal Decision-Making and Parenting Time*

**¶7** First, Mother challenges the legal decision-making order, arguing the court abused its discretion by declining to classify several incidents of domestic violence as "significant" under § 25-403.03. Alternatively, Mother contends the record does not support the court's determination that Father rebutted the statutory presumption against joint legal decision-making under § 25-403.03(D).

**¶8** We review legal decision-making orders for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). A court abuses its discretion when it "commits an error of law in reaching a discretionary decision or when the record does not support" its decision. *Id.* We will accept "the court's findings of fact unless they are clearly erroneous but review conclusions of law and the interpretation of statutes de novo." *Id.*

**¶9** To determine legal decision-making and parenting time, the superior court considers the best-interest factors under A.R.S. § 25-403, including "whether there has been domestic violence or child abuse pursuant to § 25-403.03." A.R.S. § 25-403(A)(8); *DeLuna*, 247 Ariz. at 423, ¶ 11. If the court finds domestic violence has occurred, it must determine whether it constituted (1) "significant domestic violence pursuant to § 13-3601," or (2) "a significant history of domestic violence." A.R.S. § 25-403.03(A); *DeLuna*, 247 Ariz. at 423–24, ¶¶ 11, 16.

A.     *Significant Domestic Violence or Significant History of Domestic
Violence*

**¶10**          The legislature did not define "significant domestic violence"
or "significant history of domestic violence" under A.R.S. § 25-403.03,
leaving the superior court with "discretion to weigh the evidence and
determine the degree of the domestic violence's 'significance' for the
purpose of § 25-403.03(A)." *DeLuna*, 247 Ariz. at 424, ¶ 15.

**¶11**          The superior court found Mother testified "credibly" to
multiple instances of domestic violence, but it determined that "those acts
in the spectrum of domestic violence do not constitute significant [domestic
violence] as contemplated by [the] statute."  The court considered three
factors in reaching its conclusion: "(1) [t]he seriousness of the particular
incident of domestic violence, (2) the frequency or pervasiveness of the
domestic violence, (3) and the passage of time and its impact." *See Id*. 424,
¶ 15 n.6 (noting that the factors in this three-part test, which has circulated
in the superior court, "seem reasonable" but "do not appear in
§ 25-403.03(A), any family court rule, or published Arizona opinions").

**¶12**          Mother argues that she proved Father engaged in "significant
domestic violence" or a "significant history of domestic violence."  But we
will not reweigh the evidence on appeal, *Lehn v. Al-Thanayyan*, 246 Ariz.
277, 284, ¶ 20 (App. 2019), and the record contains reasonable evidence to
support the court's decision.

B.     *Rebuttal of Presumption Against Legal Decision-Making*

**¶13**          If the superior court finds a parent has committed domestic
violence, the law imposes a rebuttable presumption that an award of sole
or joint legal decision-making to that parent would not be in the children's
best interests.  *See* A.R.S. § 25-403.03(D).  Here, the court found that Father
rebutted this presumption.

**¶14**          Mother disagrees, but we discern no error.  The court assessed
the rebuttal factors under § 25-403.03(E) and found, based on the totality of
the evidence, that Father rebutted the presumption.  The record supports
the court's finding.  Mother never expressed fears or concerns for the
children's safety with Father, and, as the superior court observed, the
parties had experienced "minimal problems since issuance of the
temporary orders."  Again, we do not reweigh facts or second-guess the
trial court's credibility determinations. *Matter of Ghostley*, 248 Ariz. 112, 117,
¶ 21 (App. 2020).

¶15　　　　Mother also contests the superior court's award of parenting time, but she never develops her argument or cites supporting legal authority, thus waiving the argument on appeal. *See* ARCAP 13(a)(6), (7); *Polanco v. Indus. Comm'n of Arizona*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007) (declining to reach merits when appellant only "mentions this argument in passing in his opening brief, . . . cites no relevant supporting authority and does not develop it further"). Even so, the record supports the court's finding. *See Ghostley*, 248 Ariz. at 117, ¶ 21.

II.　　*Child Support*

¶16　　　　Mother next contests the child support award, arguing the superior court never considered that Father recently sold a home for $133,000. "We review child support awards for abuse of discretion." *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). We uphold child support awards for any reason supported by the record, unless the record lacks competent supporting evidence. *Nia v. Nia*, 242 Ariz. 419, 422, ¶ 7 (App. 2017).

¶17　　　　Father introduced his June 2020 affidavit of financial information ("AFI") into evidence. Father described his occupation as "real estate salesperson," characterizing his compensation as "commission based." At trial, Father testified about a recent one-time payment of $133,000, which he received for selling property. Mother argues the superior court should have added this one-time payment to Father's gross income calculation under the Child Support Guidelines.

¶18　　　　Mother shows no abuse of discretion. First, the superior court did not have to add the one-time, non-recurring payment to Father's gross income calculations. *See* A.R.S. § 25-320, Arizona Child Support Guidelines § 2(A)(1)(d) (2021) ("The court has discretion to consider whether non-continuing or non-recurring income is considered income for purposes of calculating child support."). Second, the record included evidence to support the court's calculation, including Father's AFI and the unchallenged findings made in the temporary orders. Mother never objected to the admission of Father's AFI at trial and never moved to modify the temporary orders. We will not reweigh the evidence. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

III.　　*The Offset*

¶19　　　　Mother next challenges the superior court's use of an equitable lien to offset Father's debt for marital waste, health insurance premiums and other expenses. The "amount of the community interest in

separate property resulting in an equitable lien is a mixed question of fact and law," and "so we defer to the trial court's factual findings but review legal conclusions de novo." *Saba v. Khoury*, 516 P.3d 891, 894, ¶ 7 (Ariz. 2022).

**¶20** The superior court found that Father owed the community a debt for marital waste, health insurance premiums and other expenses. Even so, the court ordered this debt was offset by Father's interest in an equitable lien the community held over Mother's sole and separate property. In particular, Mother owned two properties in Mexico before the marriage, which remained her sole and separate property at dissolution. At various points, however, the community paid the mortgage on the Mexico properties. As a result, the superior court found the community held an equitable lien over Mother's sole and separate property.

**¶21** Mother acknowledges the community made mortgage payments on her sole and separate properties in Mexico, but she argues the superior court had no evidence to determine the amount of the community's equitable lien, much less to use Father's interest in that lien as an offset against his debts for marital waste and other expenses. We agree.

**¶22** Arizona courts have long recognized "that a marital community is entitled to reimbursement for its contributions to a spouse's separate property." *Id.* at ¶ 8. When the community's assets are "used to make mortgage payments on [the sole and separate] property [of one spouse], the community is entitled to some form of compensation and has an equitable lien against the property." *Barnett v. Jedynak*, 219 Ariz. 550, 553-54, ¶ 14 (App. 2009). To prove the amount of an equitable lien, however, the movant must prove "the amount of the community contribution and a division of equity reflecting the increase in value due to the community contribution consistent with a market rate of return on that contribution." *Saba*, 516 P.3d at 896, ¶ 16; *see Valento v. Valento*, 225 Ariz. 477, 482, ¶ 14 (App. 2010) (when imposing an equitable lien, the superior court "determine[s] the value of the property on the date of trial to compute the value of the community lien").

**¶23** Here, the superior court lamented that "[n]either party presented any credible evidence regarding what the Mexico properties were worth at [the] time of termination of the community, nor the dollar amount the community contributed towards the loan payoffs," even confessing it "cannot pull numbers out of thin air." Without that evidence, Father did not meet his burden of proof. *See Lawwill v. Lawwill*, 21 Ariz.

App. 75, 78 (1973) ("[T]he party seeking relief [has] the burden of proving the grounds relied upon for relief.").

**¶24**      We therefore vacate the superior court's finding of an equitable lien on Mother's sole and separate property, and we remand for the court to determine who owes what to whom under the decree in light of this decision.

*IV.*     *Amber Street House*

**¶25**      Mother purchased the Amber Street house before the marriage, but she later refinanced the mortgage during the marriage and added Father to the title. At the last evidentiary hearing, the superior court received sworn testimony from Father and Mother on who would receive the Amber Street house at dissolution. Father agreed he would be "willing to give" the Amber Street house "free and clear" to Mother and acknowledged that she was "getting all of the interest in" this house. Mother said she was "agreeable to that" during her testimony. Despite the parties' in-court testimony, the superior court divided the Amber Street house equally between Mother and Father in its final dissolution decree.

**¶26**      Mother argues that the testimony represented and memorialized a binding settlement agreement under Rule 69 of the Arizona Rules of Family Law Procedure ("ARFLP") on how the Amber Street house would be distributed, and the superior court erroneously ignored the agreement. "We review de novo the interpretation of statutes and rules." *State v. Williams*, 209 Ariz. 228, 235, ¶ 30 (App. 2004).

**¶27**      Mother shows no error. Although the terms of a binding agreement may be "stated on the record before a judge," *see* ARFLP 69(a)(2), the agreement "is not binding on the court until it is submitted to and approved by the court as provided by law," *see* ARFLP 69(b). The court never approved the purported agreement here.

*V.*     *Appraisal on Carla Vista House and Final Judgment*

**¶28**      Mother and Father purchased the Carla Vista house during the marriage. The court ordered the parties to obtain updated appraisals of the house and split the proceeds. Mother argues this was error because the court did not explain in its written order how to resolve disagreements on the appraisal. For that reason, Mother also contends the court improperly certified the judgment as final and appealable under Rule 78. *See* ARFLP 78. We review both issues de novo. *Robinson v. Kay*, 225 Ariz. 191, 192, ¶ 4 (App. 2010).

**¶29**      We discern no error.  The superior court advised at the close of trial: "[I]f you disagree [with the appraisal figures], I'll have you pick the number in the middle.  It's patently unfair based on the housing market right now to use an appraisal from last September."

**¶30**      The superior court appropriately certified the judgment as final and appealable.  A family court's ruling is final and appealable when the court resolves all pending issues and certifies the judgment as final. ARFLP 78; *Natale v. Natale*, 234 Ariz. 507, 509, ¶ 9 (App. 2014); *In re Marriage of Chapman*, 251 Ariz. 40, 43, ¶ 10 (App. 2021) (finality certification "also must be substantively warranted") (citation omitted).  The court substantively disposed of all pending issues here, including with its oral instructions on "what would happen in the event of a disagreement" about the appraisal.  *See Chapman*, 251 Ariz. at 43, ¶ 10; *Allen v. Allen*, 129 Ariz. 112, 114 (App. 1981) ("[R]endition is generally, if not always, an oral act by the court from the bench.") (citation omitted).

## CONCLUSION

**¶31**      We affirm the dissolution decree, but vacate the superior court's finding of an equitable lien.  We remand for the court to determine who owes what to whom in light of this decision.

**¶32**      Both parties seek fees and costs on appeal, which we deny in our discretion.  *See Clark v. Clark*, 239 Ariz. 281, 283, ¶ 14 (App. 2016).



AMY M. WOOD • Clerk of the Court
FILED:           HB