IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

KIUP ALEX KIM, *Petitioner/Appellant*,

*v.*

HYON PAK, *Respondent/Appellee*.

No. 1 CA-CV 23-0409 FC

FILED 11-26-2024

Appeal from the Superior Court in Maricopa County
No. FC2019-098222
The Honorable Quintin H. Cushner, Judge

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner/Appellant*

Hoffman Legal, LLC, Phoenix
By Amy Wilkins Hoffman
*Counsel for Respondent/Appellee*

**OPINION**

Presiding Judge Jennifer B. Campbell delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge Paul J. McMurdie joined.

**C A M P B E L L**, Judge:

**¶1**        Kiup Alex Kim (Husband) appeals the decree dissolving his marriage to Hyon Pak (Wife). He challenges the superior court's classification and division of certain properties. The trial court found that the profits from Husband's separate property business during the marriage were transmuted into community property, and the properties acquired with those profits were community assets. We hold that the court erred by making this finding without first apportioning the profits into separate and community property. We vacate the portions of the order classifying and dividing the properties and remand for further proceedings consistent with this opinion.

**BACKGROUND**

**¶2**        Husband and Wife married in April 2014 and had two children.[1] In December 2019, Husband petitioned to dissolve the marriage. The court held a bench trial to resolve the contested issues, including dividing the parties' assets. This is the only issue on appeal.

**¶3**        Husband is a vascular surgeon, and before the marriage, he opened a medical practice—Advanced Minimally Invasive Surgical, LLC (AMIS).[2] Before the marriage, Husband created Endovascular Medical, LLC (Endovascular), which held title to and managed a commercial property. During the marriage, Husband used funds derived from AMIS to buy several commercial properties. As he had with Endovascular, he created multiple limited liability companies to hold title to and manage the properties.

---

[1]        The couple held a wedding ceremony in 2012 but were not legally married until April 2014.

[2]        Husband maintained in superior court that he was a phlebologist, not a vascular surgeon, and that phlebologists are paid significantly less. The court found that Husband was a vascular surgeon based on reasonable evidence, and he does not challenge that finding for purposes of this appeal.

¶4            The parties disputed the nature of the five properties—all acquired during the marriage—seeking opposing determinations about whether they were community or Husband's separate property. The parties also disputed whether the commercial property held by Endovascular was a community or separate asset. Seeking answers to these questions, the parties retained a joint expert to evaluate the businesses and perform forensic tracing of the community and separate property. Both Husband and Wife later hired their own experts to perform a similar analysis.

¶5            At trial, the court received evidence from both Husband and Wife, as well as Husband's expert and the joint expert regarding the nature of the properties and the couple's finances.[3] The court issued a dissolution decree, which adopted the joint expert's conclusions that (1) a *Rueschenberg* apportionment was not necessary, and (2) extensive "commingling between and among personal accounts, AMIS, and the holding companies . . . render[ed] a tracing of sole and separate and community funds unreliable." *See Rueschenberg v. Rueschenberg*, 219 Ariz. 249 (App. 2008). The court found that the five properties acquired during the marriage were community property. The court confirmed that Endovascular was Husband's sole and separate property but found the community had acquired "an equitable lien [against the property] equal to the amount spent increasing [its] equity from the community and commingled accounts." Husband timely appealed.

## DISCUSSION

¶6            Husband argues the trial court erred by declining to apportion AMIS's profits during the marriage into community and separate property. Husband asserts that without apportioning the profits, tracing the separate property portion was impossible to show that the later-acquired commercial properties were his separate property. He contends the court committed clear error by finding that the properties were transmuted into community property because of the extensive commingling and failing to credit him for his separate property contributions. We agree.

---

[3]        Wife's expert's report was admitted into evidence at trial, but she did not testify. In her report, she reached the same conclusions as the joint expert, and the court gave it little weight because she did not testify and her report "did not contain the same amount of detail as" the joint expert's report.

¶7            We review de novo the trial court's characterization of property as separate or community, but we review the court's division of that property for an abuse of discretion. *Whitt v. Meza*, 257 Ariz. 149, 157, ¶ 27 (App. 2024). We will not reweigh evidence on appeal and will uphold the court's findings of fact absent clear error. *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). "We will defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

¶8            Property owned before marriage is separate property, as is that property's subsequent "increase, rents, issues and profits" occurring during a marriage. A.R.S. § 25-213(A). When it comes to a separate-property business, the business's profits or increase in value during marriage are considered separate property if generated by the "inherent qualities of the business," but community property if generated by the "individual toil" of either spouse. *Rueschenberg*, 219 Ariz. at 252, ¶ 12 (citation omitted). If an asset is acquired during marriage with the profits of a separate-property business, and those profits contain both separate and community funds, the value of the acquired asset "must be apportioned accordingly." *Cockrill v. Cockrill*, 124 Ariz. 50, 54 (1979); *see also Nace v. Nace*, 104 Ariz. 20, 23 (1968). In apportioning the asset, the court must determine what percentage of the funds used to acquire the asset came from the separate-property portion and what percentage came from the community-property portion. *See Cockrill*, 124 Ariz. at 54. Then the court must distribute the asset to the community- and separate-property estates based on those percentages. *See id.*

¶9            Separate property may be transmuted into community property when it is commingled so much that its "identity . . . as separate or community is lost." *In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986). When commingling occurs, the entire fund becomes community property "unless the separate property can be explicitly traced." *Porter v. Porter*, 67 Ariz. 273, 281 (1948); *see Cooper v. Cooper*, 130 Ariz. 257, 259–60 (1981) ("[T]he burden is upon the person claiming that the commingled funds, or any portion of them, are separate to prove that fact and the amount by clear and satisfactory evidence.").

## I.      AMIS is Husband's Separate Property.

¶10           AMIS being Husband's separate property is undisputed. All experts agreed that AMIS declined in value throughout the marriage. The joint expert attributed a portion of the decline in value to Husband and his staff shifting their focus from medical-service provision to "purchasing,

renovating, and managing [] properties." The court did not err in ruling that AMIS was Husband's separate property, and because it declined in value, there was no community interest in the business. *See Cockrill*, 124 Ariz. at 52 ("[T]he separate property of the spouse remains separate. It is merely the profits or the increase in value of that property during marriage which may become community property . . . .") The court properly allocated all interest in AMIS to Husband.

## II. AMIS's Profits Must Be Apportioned.

**¶11** We now address Husband's argument that the court was required to apportion AMIS's profits during the marriage into community and separate property before engaging in its tracing analysis. For the reasons discussed below, we agree with Husband and vacate the portions of the trial court's order classifying and dividing the five properties purchased during the marriage.

**¶12** Despite decreasing in value, AMIS generated about $4 million in profits during the marriage.[4] The experts agreed that only $360,000 of the profits went to the community and the rest went to acquiring the five commercial properties.[5] But the experts disagreed on the amount they believed was reasonable compensation for Husband's work as a physician during the marriage—Husband's expert concluded: $1.8 million ($1.3 million after taxes) and the joint expert concluded: $2.9 million ($2 million after taxes). All experts agreed that the community was undercompensated for Husband's work as a physician, as it received only $360,000 out of either $1.3 million or $2 million in after-tax reasonable compensation.

**¶13** As set forth above, the experts agreed that AMIS's $4 million in profits during marriage exceeded Husband's reasonable compensation as a physician. Regarding those excess profits, Husband's expert determined that 65% resulted from Husband's toil in managing AMIS, and 35% resulted from AMIS's inherent qualities—its "associate physicians" and "30 to 40 [total] employees." The joint expert acknowledged that some of the profits were "sole and separate . . . based on the investment return attributable to the practice." It is undisputed that some of AMIS's profits were Husband's separate property. But the joint expert did not apportion the profits into separate and community portions. She took a backward-

---

4       We round the figures in this section for simplicity.
5       In addition to purchasing the five properties, during the marriage, $515,687 of the profits went to pay off the Endovascular property's mortgage. We will address the parties' interests in Endovascular later.

focused assessment and determined that all of the profits from AMIS had been transmuted to community property through extensive commingling. This assessment is wrong as it neglects to account for Husband's undisputed sole and separate interest in the $4 million that AMIS produced over the marriage.

¶14　　　　True, to receive a separate interest in the five properties purchased during the marriage, Husband had to show that they were purchased in whole or part with identifiable separate funds. *See Nace*, 104 Ariz. at 23 ("Property purchased during marriage with separate property remains such."); *Cupp*, 152 Ariz. at 164 (presuming property acquired during marriage is community). The joint expert determined that Husband could not make that showing because the profits from AMIS were too extensively commingled before being used to purchase the properties. *See Cupp*, 152 Ariz. at 164. However, by making that determination at the start of her analysis, the joint expert ignored any investment return attributable to Husband's sole and separate property and the ability to identify its subsequent "increase, rents, issues and profits" during marriage. A.R.S. § 25-213(A). It is undisputed that AMIS produced $4 million in profits throughout the marriage—making the profits from the business identifiable and apportionable. This is precisely why our courts require the separate and community portions of hybrid profits to "be apportioned accordingly." *Cockrill*, 124 Ariz. at 54. The joint expert's analysis was fatally flawed as she missed the required first step—apportioning the profits from AMIS. *See id.*

¶15　　　　On the other hand, Husband's expert began with an apportionment analysis. In doing so, he assumed that 65 percent of distributions from AMIS were community property and 35 percent were separate property. From there, he allocated all transfers from accounts "pro-rata, based on the [separate] or community funds in the account."

¶16　　　　The court disapproved of Husband's expert's analysis, finding that it did not sufficiently demonstrate "that the funds used to acquire the properties . . . could be traced to [AMIS]" because it "contained assumptions, including the assumption that . . . distributions [from AMIS were] 65 percent community." The court then adopted the joint expert's analysis and awarded Wife a 50% community interest in each of the five properties. This was an abuse of discretion.[6]

---

[6]　　　　The court was not bound by the percentages found by the expert, and we render no opinion on whether Husband's expert came to the correct

¶17        To begin, explicit tracing does not require documenting every transaction dollar-for-dollar, as courts may consider circumstantial evidence in determining whether there is "clear and satisfactory evidence" that the separate property maintained its identity. *See Cooper*, 130 Ariz. at 259–60; *Whitt*, 257 Ariz. at 154–55, ¶¶ 16–17 (finding that although community funds were added to an account, $39,400 remained separate funds because the account's balance never fell below $39,400 and nothing showed that the account was used for separate expenditures during the marriage). Moreover, the assumption the court found unreliable here—Husband's expert's allocation of AMIS's profits into separate and community portions—was exactly what was required. It was an apportionment of the separate-property business's profits that both *Cockrill* and *Rueschenberg* mandate. While a trial court may disagree with the method or amount of a proposed apportionment, it cannot forgo apportionment entirely and award the community all profits from a separate-property asset, as the court did here. *See Cockrill*, 124 Ariz. at 54; *Rueschenberg*, 219 Ariz. at 255, ¶¶ 24–26.

¶18        In other words, because the $4 million in distributions from AMIS were not initially divided by their separate and community character, and the distributions undisputably contained both separate and community property, the court was required to determine the separate and community portions and allocate them to the respective estates accordingly. *See Cockrill*, 124 Ariz. at 54; *Rueschenberg*, 219 Ariz. at 255, ¶ 24. The community was entitled to the value of Husband's reasonable compensation for his work as a physician, which Husband's expert concluded was $1.8 million ($1.3 million after taxes) and the joint expert concluded was $2.9 million ($2 million after taxes). Once the court determines the amount of reasonable compensation, it must then determine how to appropriately apportion the remainder between the community and Husband's separate-property estate. Only then, once the separate portion of the distributions is identified, can they be traced to the funds used to purchase the five properties. *See Porter*, 67 Ariz. at 282–83 (tracing analysis hinges on whether the court can "determine which portion of the combined fund is separate and which is community"). The court abused its discretion by adopting the joint expert's analysis, which forewent apportionment and concluded that the funds were commingled and transmuted into community property. *See Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App.

conclusion. We only note that the methodology used by Husband's expert was sound.

2019) ("A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." (citation omitted)).

¶19 On remand, the court must first determine what amount of the $4 million in distributions resulted from Husband's work as a physician during the marriage. That amount goes to the community, and the remainder of the profits need to be apportioned between the community and Husband as his sole and separate property. Only then, once the required apportionment has been conducted, can the court determine the character of the five properties acquired during the marriage. To further complicate this analysis, the court must also determine how much of Husband's toil and effort contributed to acquiring and managing those properties and credit the community accordingly. But again, the first step in the process is apportioning the $4 million generated by AMIS throughout the marriage into Husband's separate property and the community property interests. We remand this portion of the court's orders.

## III. AMIS's Profits Must Be Apportioned to Divide Endovascular Medical, LLC.

¶20 As for Endovascular, Husband bought the property and formed the LLC before the marriage, and the court found it was Husband's separate property. The court made the following findings in determining whether there was an equitable lien in favor of the community and, if so, for how much. Husband purchased the property for $1.5 million, which was also its value on the date of marriage. There were $515,687 in net community contributions paid toward the mortgage during the marriage. At the end of the marriage, the property was valued at $3.65 million.

¶21 The community may acquire an equitable lien against separate property when it contributes capital toward the property. *Tester v. Tester*, 123 Ariz. 41, 43 (App. 1979). Even still, there is no lien if the separate-property holder traces the funds and shows by clear and convincing evidence that the contributions came from separate property. *See Noble v. Noble*, 26 Ariz. App. 89, 95–96 (1976). Husband argues the equitable lien was improper because it was "calculated based off of 100% of the profits of AMIS being treated as community," and doing so was error because the court did not apportion the profits into community and separate portions as required by *Cockrill* and *Rueschenberg* before calculating the amount of the lien. We agree.

¶22 For the same reasons discussed above, the court was required to apportion AMIS's profits first before concluding that all funds had been

transmuted into community property. *See Cockrill*, 124 Ariz. at 54; *Rueschenberg*, 219 Ariz. at 255, ¶ 24. Here, the court found that the "amount spent increasing the [Endovascular] property's equity [came] from the community and commingled accounts." It then used a *Drahos* calculation to determine the community's $1,254,838.37 equitable lien against Endovascular.[7] *See Drahos v. Rens*, 149 Ariz. 248 (App. 1985).

**¶23** Because the contributions to Endovascular during the marriage came from AMIS's profits, the court abused its discretion by forgoing apportionment and crediting the community for the entire amount of the contributions. *See Noble*, 26 Ariz. App. at 86 ("[P]ayments for separate uses out of an account containing traceable community and separate funds are deemed to be paid out of separate funds."). We vacate the portion of the trial court's order awarding the community a lien of $1,254,838.37 against Endovascular. We remand for the court to recalculate the lien once it apportions the profits from AMIS and then determines the community and separate interests in Endovascular.

**CONCLUSION**

**¶24** For these reasons, we vacate the portions of the decree dealing with the division of the property listed above and remand for further proceedings consistent with this opinion. Under A.R.S. § 25-324, both parties request attorneys' fees on appeal. In our discretion, we deny both requests but award Husband his taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AGFV

---

[7] The *Drahos* formula for calculating the community lien in algebraic form is C + [C/B x A]. *Barnett v. Jedynak*, 219 Ariz. 550, 554, ¶ 16 (App. 2009). In this formula, A = appreciation in value of the property since purchase; B = the property's purchase price; and C = community contributions to the principal. *Id.* Applied here: $515,687 + [($515,687/$1,500,000) x ($3,650,000 - $1,500,000)] = $1,254,838.37.